In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a DAVECO, Debtor.

BANK OF COMMERCE, Successor In Interest To Southern Industrial Banking Corporation, d/b/a DAVECO, Plaintiff,

v.

Berl D. FREELS and Lucille E. Freels, Defendants.

Bankruptcy No. 3–83–00372.
Adv. No. 3–84–0146.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 30, 1985.

Frantz, McConnell & Seymour, Robert M. Bailey, Knoxville, Tenn., for plaintiff.

McNees, Lain, Roe & Knolton, Robert W. Knolton, Oak Ridge, Tenn., for defendants.

## MEMORANDUM AND ORDER ON MOTIONS OF PLAINTIFF AND DEFENDANT FOR SUMMARY JUDGMENT

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the remedy of equitable cancellation, sought by defendants in a state court action regarding allegedly forged deeds of trust, constitutes a "claim" under 11 U.S.C.A. § 101(4)(B) (1979).

Also at issue is whether creditors who had actual knowledge of the debtor's reorganization case, but who were given none of the requisite notice or documentation concerning the proceedings and applicable deadlines, may be barred by the discharge arising upon confirmation of the debtor's plan of reorganization from proceeding with the state court action and ultimately filing their claim with the bankruptcy court.

### I

On March 10, 1983, Southern Industrial Banking Corporation (SIBC) filed a petition for relief under chapter 11 of the Bankruptcy Code. On April 19, 1983, this court entered an order appointing a trustee in the case.

Approximately a year earlier on April 1, 1982, the defendants had instituted an action in state court against SIBC contesting a foreclosure sale of real estate owned by

defendants. As plaintiffs in the state court action, defendants alleged that prior to October 12, 1978, SIBC made a loan to defendants' son and received in return a promissory note for $34,435.00 dated October 12, 1978. In addition, defendants alleged that SIBC required and obtained from defendants' son a deed of trust upon real property owned by defendants. According to defendants' state court complaint, defendants' son forged the signature of defendant Berl D. Freels to the note and deed of trust. Defendant Lucille E. Freels admitted she may have signed the note and deed of trust but denied receiving consideration for her signature. Defendants alleged that employees of SIBC notarized the documents without actually witnessing the signature of either defendant.

Additionally, defendants alleged that SIBC made a second loan to their son and obtained another deed of trust upon the property. Both defendants denied signing this deed of trust, which also bore their purported and notarized signatures. Defendants alleged that the signatures were again improperly notarized by a SIBC employee.

SIBC subsequently took action to foreclose on the property. The property was conveyed to SIBC by a Trustee's Deed dated July 3, 1981.

Defendants sought in the state court action to cancel the deeds of trust, to set aside the foreclosure sale, and to cancel the Trustee's Deed to SIBC. Defendants also requested compensatory and punitive damages. The matter was awaiting trial when SIBC commenced its bankruptcy proceedings.

In his affidavit in support of defendants' motion for summary judgment, defendants' attorney states that prior to the scheduled trial date he received a telephone call from the attorney of one of the defendants other than SIBC advising him of the commencement of SIBC's reorganization case. Accordingly, he prepared and caused an order of continuance to be entered in the state court proceeding.

Defendants' attorney denies that either he or his clients received official notification of the commencement of the bankruptcy proceedings. After commencement of the case, defendants' attorney did correspond with attorneys for SIBC's trustee in bankruptcy regarding the matter. Initially he made inquiries regarding responsibility for property taxes on the real estate pending resolution of the dispute. Thereafter, on June 1, 1983, he wrote to Robert M. Bailey, an attorney for the trustee, as follows:

> We are merely awaiting to proceed with this matter in Anderson County. In view of the recent bankruptcy proceedings for Southern Industrial Bank, all counsel agreed to postponement of same.

> I am wondering if there is any way that we will be able to proceed in this matter in the Chancery Division of the Circuit Court in Anderson County. Obviously taxes on the real property involved are accumulating and the parties need to resolve the issues as soon as possible.

Again, on October 17, 1983, he wrote:

> As your file will reflect, I wrote to you on June 1, 1983, inquiring into the above pending lawsuit here in Anderson County. You had advised me that you would check into this matter to try to determine what could be done about proceeding with this lawsuit, and especially, due to the fact that we are getting tax bills on the property which is apparently still titled in Mr. Freels's name, but as you are now aware, the above lawsuit concerns setting aside the foreclosure sale of the property, and in the present state of confusion, nobody wants to pay these taxes. ... If we cannot proceed with the lawsuit promptly, I am requesting that Southern Industrial pay these taxes so that the property will not be sold at a tax sale.

> Please let me hear from you as to the current status of the bankruptcy proceedings of SIDC [sic] and as to whether or not these taxes can be paid, or alternatively, we can proceed with our lawsuit

here in Anderson County. Thanks for your help.

On October 25, 1983, Bailey responded: Thank you for your letter of October 17, 1983, concerning the Freels matter.

I have sent the tax statements to Irwin A. Deutscher [the chapter 11 trustee] so that they can make a determination as to whether they can pay the tax bills pursuant to the bankruptcy laws. It is my understanding that there is a Motion pending in the bankruptcy court asking authority to pay certain real estate taxes. There is a hearing scheduled for Friday, October 28th, concerning the adequacy of the disclosure statement filed in connection with a Plan of Reorganization concerning SIBC. If the disclosure statement is approved, ballots will be sent to the creditors of SIBC so that they can vote on the plan. If the plan is approved, it should be approved by December 1st. At that point, there should be a better understanding as to who will be representing the successor entity *and the Freels case can then probably proceed and be disposed of.*

(Emphasis added.)

On October 31, 1983, this court entered Order No. 64 fixing deadlines for filing acceptances or rejections of the plan and for filing objections to confirmation. The order set the hearing on confirmation for November 28, 1983. Order No. 66, entered the same day, fixed November 28, 1983, as the deadline for filing claims against the estate. Defendants' attorney denies that either he or his clients received notice of these deadlines. Defendants did not file a proof of claim.

On November 28, 1983, this court entered an order conditionally confirming the trustee's modified plan of reorganization. Thereafter, on January 20, 1984, this court entered an order effective that date confirming the modified plan of reorganization.

Subsequently, defendants' attorney took steps to set the matter for trial in state court. On February 13, 1984, Bailey wrote: "I am in receipt of your Motion in the above-captioned case. *I have no objection to this case being set for trial.*" (Emphasis added.)

On March 7, 1984, however, Bailey wrote:

In response to you having set the above-captioned cause for trial on May 8, 1984 (in the 28th Judicial Circuit for Anderson County, Tennessee, Chancery Division), I must refer you to the Order Confirming Modified Plan of Reorganization and the Notice of Confirmation of Modified Plan of Reorganization served upon all creditors of Southern Industrial Banking Corporation in its Chapter 11 bankruptcy proceeding and which you attached to your Motion. As stated in both the Order and Notice, effective January 20, 1984, Southern Industrial Banking Corporation was discharged from all obligations, demands and/or claims which arose prior to that date. As further stated by the aforesaid Notice, all creditors whose claims are so discharged are enjoined from commencing, continuing or employing any action, process or act to collect or recover any such discharged debt as the liability of Southern Industrial Banking Corporation or from the property of Bank of Commerce, the reorganized debtor.

... Clearly, your continuation of the above-captioned action in state court against Southern Industrial Banking Corporation is a violation of the injunction imposed by the confirmation of the Plan of Reorganization and discharge of Southern Industrial Banking Corporation. I must insist, therefore, that said action immediately be dismissed as to Southern Industrial Banking Corporation.

Defendants' attorney asserts that the first and only formal or official notice of the reorganization proceedings which either he or his clients received was a notice of confirmation of the plan dated January 20, 1984.

SIBC's reorganization case is a complex proceeding involving the claims of at least

5,800 creditors. Utilizing computer-generated mailing labels filed by SIBC, the clerk of this court sent to creditors the initial notice of the commencement of the case and the first meeting of creditors. Thereafter, the court directed the requisite notices to be sent by a party other than the clerk of the court. Specifically, Orders Nos. 64 and 66 directed the trustee to forward notice to creditors of the deadlines for accepting or rejecting the plan and objecting to confirmation, the deadline for filing claims, and notice regarding the hearing on confirmation.

Defendants' state court action was listed as a pending lawsuit in response to question 12.a. in SIBC's statement of financial affairs. Defendants' action is also listed as a pending lawsuit in the trustee's amended disclosure statement.

However, defendants' names do not appear on the computer-generated labels furnished by SIBC and utilized by the clerk of the court to send notice of the first meeting of creditors.[1] This court has not been furnished any evidence by the plaintiff Bank of Commerce, SIBC's successor in interest, to indicate that defendants were subsequently mailed notice or documentation concerning the various reorganization proceedings and deadlines. Plaintiff does not deny that the only formal notice furnished to defendants was the notice of confirmation dated January 20, 1984. However, plaintiff notes that notice by publication was given in newspapers of general circulation regarding hearings on the adequacy of the disclosure statement and the hearing on confirmation of the plan.

Plaintiff commenced this adversary proceeding on April 6, 1984, seeking a determination that defendants are barred from further pursuing the state court action by virtue of the discharge from debts arising upon confirmation of the reorganization plan. Both parties have filed motions for summary judgment.

## II

Defendants contend that their state court action would not be barred by the discharge injunction under 11 U.S.C.A. § 524(a)(2) (1979)[2] because it is not an effort to recover a "debt" subject to discharge under 11 U.S.C.A. § 1141(d)(1) (1979).[3] In this contention, defendants are mistaken.

The Bankruptcy Code defines "debt" to mean "liability on a claim." 11 U.S.C.A.

---

**1.** The mailing labels as furnished to the court contained the names generally listed in alphabetical order. There were, however, exceptions. This court does not represent that it has examined nearly six thousand such labels to determine that the defendants' name appeared elsewhere than in its proper alphabetical location. However, SIBC also furnished computer-generated index cards which purportedly contained the same names as the mailing labels. Personnel in the court clerk's office alphabetized these address cards. Defendants' names do not appear on any such cards in the appropriate alphabetical location.

**2.** This section provides:
   (a) A discharge in a case under this title—
   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;
   (2) operates as an injunction against the commencement or continuation of an action,

the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived....
11 U.S.C.A. § 524(a) (1979).

**3.** This subsection provides:
   Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
   (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
   (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
   (ii) such claim is allowed under section 502 of this title; or
   (iii) the holder of such claim has accepted the plan....
11 U.S.C.A. § 1141(d)(1) (1979).

§ 101(11) (1979). The Code defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.A. § 101(4) (1979).

█ In their state court action defendants seek the cancellation of the allegedly forged deeds of trust, the setting aside of the foreclosure sale, and the cancellation of the Trustee's Deed to SIBC. Defendants also seek certain compensatory and punitive damages. Undoubtedly, the demand for damages is an assertion of a "right to payment" constituting a "claim" under § 101(4)(A). The question remains, however, whether defendants' demand for cancellation of the instruments and the setting aside of the foreclosure sale constitutes a "claim" under § 101(4)(B).

Under the terms of § 101(4)(B), in order to constitute a "claim" the right asserted by defendants must be (1) a right to an equitable remedy (2) for a breach of performance (3) which gives rise to a right to payment. None of these three critical elements are defined elsewhere in the Bankruptcy Code.

█ Plainly, defendants seek an "equitable remedy" in the state court action. The cancellation of instruments is an equitable remedy. *Johnson v. Cooper,* 10 Tenn. 524 (1831); 12A C.J.S. *Cancellation of Instruments* § 7 (1980).

To constitute a "claim" the right to the equitable remedy sought by defendants must be one for a "breach of performance." Neither the Code nor the legislative history of § 101(4)(B) make clear the precise scope intended by this ambiguous phrase.[4] One commentator suggests that

---

**4.** As originally proposed, § 101(4)(B) included as a "claim" a right to an equitable remedy for breach of performance *not* giving rise to a right to payment. *See generally* Matthews, *The Scope of Claims Under the Bankruptcy Code* (First Installment), 57 Am.Bankr.L.J. 221, 232–35 (1983). The House Report accompanying this unenacted version merely states:

Paragraph (4) defines "claim." The effect of the definition is a significant departure from present law. Under present law, "claim" is not defined in straight bankruptcy. Instead it is simply used, along with the concept of provability in section 63 of the Bankruptcy Act, to limit the kinds of obligations that are payable in a bankruptcy case. The term is defined in the debtor rehabilitation chapters of present law far more broadly. The definition in paragraph (4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters. The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. The definition also includes as a claim an equitable right to performance that does not give rise to a right to payment. By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 309, *reprinted in* 1978 U.S.Code & Ad.News 5787, 5963, 6266.

Following a compromise between this and Senate proposals, § 101(4)(B) was enacted in its present state. *See generally* Matthews, *The Scope of Claims Under the Bankruptcy Code* (First Installment), 57 Am.Bankr.L.J. 221, 230–38 (1983). Comments of the principal legislative proponents of the bill provide:

Section 101(4)(B) represents a modification of the House-passed bill to include the definition of "claim" a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event, the creditor entitled to specific performance would have a "claim" for purposes of a proceeding under title 11.

the phrase "breach of performance" should be narrowly interpreted:

> The phrase "breach of performance" in § 101(4)(B) has significant implications for the scope of the claims concept, yet is nowhere defined in the Code. While the term doubtless was intended to encompass breaches of private contract, what about breaches of other kinds of duties? What about statutory duties? What about one's general duty to act without negligence? For several reasons, the better approach appears to be to take a *narrow* view of what constitutes a breach of performance.
>
> First, the phrase "breach of performance" is amenable to a narrow construction, without too much difficulty, by focusing on the term "performance." The term "breach" cannot reasonably be subjected to a narrow definition because of its broad usage in all kinds of other contexts. In contrast, the term "performance" may be limited to the context of private contractual obligations and obligations imposed by law essentially in order to supplement private contracts. ... Besides breach of contract, the phrase "breach of performance" could reasonably be applied to other similar situations, e.g., where there is a breach of performance on the part of a fiduciary, or on the part of one whom another stands in the relation of third party beneficiary. The phrase thus could be limited if reason were to compel such a limitation.
>
> Second, a broad interpretation is unacceptable because the phrase would effectively be read out of the statute. If breach of performance were equated with breach of duty, the phrase would have no limiting effect on the types of equitable rights qualifying as claims under subsection (B). In some sense, every equitable right exists because one person has violated a duty owed to someone else. At a minimum, the phrase must be restricted enough to make the composite term "equitable remedy for breach of performance" meaningful.

Matthews, *The Scope of Claims Under the Bankruptcy Code* (Second Installment), 57 Am.Bankr.L.J. 339, 349–50 (1983) (footnotes omitted).

However, the United States Supreme Court has recently rejected such a restrictive approach. In *Ohio v. Kovacs*, —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) the Court held that debtor's obligation under a state court injunction requiring the clean-up of a hazardous waste disposal site was a "claim" subject to discharge under the Bankruptcy Code. The Court observed:

> There is no indication in the language of the statute that the right to performance cannot be a claim unless it arises from a contractual arrangement. The State resorted to the court to enforce its environmental laws against Kovacs and secured a negative order to cease polluting, an affirmative order to clean up the site, and an order to pay a sum of money to recompense the State for damage done to the fish population. Each order was one to remedy an alleged breach of Ohio law; and if Kovacs' obligation to pay $75,000 to the State is a debt dischargeable in bankruptcy, which the State freely concedes, it makes little sense to to [sic] assert that because the cleanup order was entered to remedy a statutory violation, it cannot likewise constitute a claim for bankruptcy purposes. Furthermore, it is apparent that Congress desired a

---

On the other hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" and would therefore not be susceptible to discharge in bankruptcy. 1978 U.S.Code Cong. & Ad.News 6436, 6437 (statement of Rep. Edwards); 1978 U.S.Code & Ad.News 6505, 6506 (statement of Sen. DeConcini).

Thus, the available legislative history only provides one example of a "claim" under § 101(4)(B) and provides no examples of rights which would not constitute a "claim" under that section. Further, the legislative history provides little or no guidance as to the meaning of the phrase "breach of performance."

broad definition of a "claim" and knew how to limit the application of a provision to contracts when it desired to do so. —— U.S. at ——, 105 S.Ct. at 708–709.

█ The equitable remedy sought by defendants may be said to be one for breach of performance within the meaning of the statute.

█ Finally, in order for a right to an equitable remedy to constitute a claim, the breach of performance must be one giving rise to a right to payment. A party to a transaction induced by fraud may elect between two remedies—he may treat the contract as voidable and sue for the equitable remedy of rescission or he may sue for damages at law under the tort theory of "deceit." *Vance v. Schulder*, 547 S.W.2d 927 (Tenn.1977). Thus, SIBC's alleged fraud, if proven, could entitle defendants to a right to payment in the form of damages.

█ Defendants' demand for equitable relief constitutes, then, a "claim" within the meaning of § 101(4)(B).

█ Nonetheless, even though both the demand for damages and the prayer for equitable relief were dischargeable claims for which defendants should have filed a proof of claim, under the facts here presented defendants will not be barred from presenting their claims. *See New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (entry of order of confirmation did not preclude creditor from asserting lien against debtor's property, despite creditor's actual knowledge of reorganization, where creditor not given requisite notice of proceedings); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir.1974) (creditor who did not receive notice of proceedings and of time and manner for filing a claim was not barred by confirmation of plan from presenting claim, despite creditor's general awareness of reorganization).

In this connection the court notes the more recent holding of the Court of Appeals for the Tenth Circuit in *Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984). In *Reliable Electric* the court of appeals held that the claim of a creditor who had actual knowledge of the debtor's reorganization case, but who received no formal notice of the proceedings and filing deadlines, was neither discharged nor bound by the confirmed plan. This court does not find it necessary to either accept or reject the conclusions expressed in *Reliable Electric*. The facts of that case are distinguishable from the facts in the instant case. In *Reliable Electric* the *debtor* itself sought to file a proof of claim on behalf of the creditor in order to compel the creditor's claim to be subject to the terms of the confirmed plan against the creditor's will. In contrast, in the instant case, defendants, far from objecting to having their claim treated as a late-filed claim under the confirmed plan, have indeed requested permission to file a claim under the confirmed plan in the event that this court determines their prayer for equitable relief constitutes a claim.

As the pleadings, exhibits, affidavits, and the record as a whole show that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law, Bankruptcy Rule 7056, defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is accordingly denied.

Defendants may proceed in their state court action against the plaintiff. Thereafter, in the event defendants are successful in their state court action, they shall be permitted to file a proof of claim in the bankruptcy proceeding within thirty (30) days from the entry of a final judgment.