**In re U.S. ADVERTISING INC., Debtor.**

**Bankruptcy No. 91–11631.**

United States Bankruptcy Court,
D. Rhode Island.

Sept. 4, 1991.

---

Anitra Lanczi, Philip Noel, McGovern & Noel, Ltd., Providence, R.I., for debtor.

Stephen P. Sheehan, Wistow & Barylick Inc., Providence, R.I., for First Constitution Bank.

## DECISION AND ORDER DENYING MOTIONS FOR RELIEF FROM STAY, TURNOVER, AND DISMISSAL

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on July 12 and August 7, 1991, on the motion of First Constitution Bank for relief from the automatic stay and for leave to continue foreclosure proceedings against the motor yacht Sweet Retreat, which is the Chapter 11 Debtor's only asset. First Constitution also asks for protection from the turnover provisions of 11 U.S.C. § 543, and for dismissal of the case on bad faith grounds.

### BACKGROUND AND OPERATIVE FACTS [1]

On April 25, 1988, U.S. Advertising and its principal, John Laramee, as co-obligors, executed a Promissory Note in return for a loan of $650,000 from First Constitution.

On March 29, 1989, U.S. Advertising gave First Constitution a First Preferred Ship Mortgage on the Sweet Retreat, which was properly recorded on May 8, 1989.

The Sweet Retreat is a sixty-foot Jefferson diesel motor yacht built in 1988, with three staterooms, plus crew quarters. It is documented with the Coast Guard for recreational use, and has been used exclusively for recreation since the Debtor acquired it.

In December, 1990, with John Laramee experiencing financial difficulty, U.S. Advertising stopped making payments to First Constitution. As of April 4, 1991, the principal balance due under the Note was $605,389, plus $23,067 in interest, and an undetermined amount of late fees. The Debtor does not contest either the amount due or the validity of the Note. The payments under the Note are $6,980 per month.

On February 4, 1991, First Constitution started an admiralty foreclosure action against the Sweet Retreat, *in rem*, and against U.S. Advertising and its principal, Laramee *in personam*.

On the same date, the Magistrate Judge ordered the arrest of the Sweet Retreat, and the United States Marshal seized the vessel. Thereafter, on February 15, 1991, the Magistrate Judge appointed Cove Haven Marina as substitute custodian of the vessel, where it is currently stored at a cost of $1,600 per month.

On May 10, 1991, the District Court entered a default judgment by consent [2] against the vessel, foreclosing First Constitution's lien in the amount of $641,780.87, and ordering a public sale of the vessel on June 19, 1991. On June 18, 1991, the day before the scheduled foreclosure sale, U.S. Advertising filed its Chapter 11 petition in this Court. On June 19, 1991, as a result of the Chapter 11 filing the District Court entered an order staying the sale.

### DISCUSSION

A. SECTION 362(d)

The Debtor concedes that there is no equity in the property, for purposes of

---

1. This decision constitutes our findings of fact and conclusions of law. *See* Fed.R.Bankr.P. 7052.

2. *Supplemental Rule C(6) for Admiralty and Maritime Claims* provides that the claimant of property subject to an *in rem* action shall file a claim of property interest within ten days after execution of process, and an answer within twenty days after filing. Neither the Debtor nor Mr. Laramee complied with this requirement. As a result, the Debtor consented to entry of default judgment.

11 U.S.C. § 362(d)(2)(A). The parties agree, in fact, that the most that could be obtained at a foreclosure sale in this state or in the Virgin Islands under current market conditions, is approximately $250,000. In light of this huge potential deficiency, the Debtor and Laramee propose that the vessel be placed into commercial charter service in the seasonally longer and allegedly more lucrative U.S. Virgin Islands market, under contract with Virgin Islands Power Yacht Charters (VIP). The Debtor submits that the evidence presented by VIP, and its "pro forma" projection of cash flows over the next five years, constitute adequate protection of First Constitution's interest, as well as the required showing of a reasonable possibility of a successful reorganization. Specifically, Frank Jordan, the President of VIP, testified that in his opinion the Sweet Retreat should produce $1,322,670 in gross charter income for years one through five, less operating expenses of $810,449. With annual loan payments of $84,110, the operating cash flow would be a positive $4,565 in year one, increasing annually thereafter until a projected sale of the vessel (for approximately $420,000 net) in year five, which would pay the Note in full. Debtor's Exhibit # 3. Jordan's credibility and knowledge in this type of charter business in the Virgin Islands were not seriously called into question, nor was his experience as a dealer and service representative for Jefferson Yachts. His opinion and projections were not damaged either, through cross examination or by contradictory evidence presented by the Bank, and although it will cost $35,000 to outfit and deliver the vessel for charter, said expense and the alleged uncertainty involved in sending the Bank's collateral out of the jurisdiction do not really put the movant's position more at risk than it was on the date of the petition.

We also conclude that the Debtor's proposal satisfies the standard for § 362(d)(2)(B), as announced by the Supreme Court in *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers*, the Court noted that the phrase "necessary to an effective reor-ganization" in § 362(d)(2)(B) means that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id.* at 376, 108 S.Ct. at 632 (quoting *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 370 (5th Cir. 1987)). *See also In re Swansea Consol. Resources*, 127 B.R. 1, 2 (Bankr. D.R.I.1991).

▆ Notwithstanding the Bank's desire to proceed headlong with an immediate foreclosure sale in Rhode Island, we find that at this time the most cost effective and rational method of asset recovery (even from the Bank's standpoint) is through the charter-based reorganization presented by the Debtor. Although this particular vessel has seen no actual charter service, it has been well maintained and is comparable to other vessels currently being profitably chartered in the Virgin Islands by VIP, and others. There is no credible evidence to suggest that the Sweet Retreat will not produce the revenues that have been projected. In addition, the expense of preparing the vessel for charter and delivery will be provided by an outside source and guaranteed by John Laramee, and those costs will not become an obligation of the Debtor. Based upon the record to date, we find that there is a present likelihood of reorganization. The accuracy of this finding should be ascertainable within a reasonably short time, and at not much additional risk to the Bank, whose position, as to this security, was hopeless long before Bankruptcy Court intervention.

The other side of the coin, however, is that the Bank is not receiving any principal or interest payments, and as adequate protection for the Bank's current (though undersecured) interest in the vessel, we impose the following conditions:

1) The Debtor is authorized to enter into a management agreement with VIP to operate the Sweet Retreat under terms and conditions substantially similar to those outlined at the hearing;

2) The Debtor is required to have the vessel prepared and available for charter in the Virgin Islands by October 30, 1991;

3) The Debtor is ordered to make such post-petition payments to First Constitution as will bring it current by November 30, 1991;[3]

4) By the end of January, 1992, the Debtor is ordered to file an interim report of the Sweet Retreat's charter activity and all income and expenses up to that time;

5) Unless one is called for sooner, a status hearing for review of the vessel's charter operations for the 1991–92 busy season, is scheduled for April 30, 1992 at 10:00 a.m.;

6) Any default by the Debtor as to these requirements, absent mitigating circumstances, will likely result in the granting of the relief sought by the Bank.[4]

## B. TURNOVER

■ On June 25, 1991, the Debtor sent a letter to Cove Haven Marina, as substitute custodian, requesting turnover of the vessel under § 543 "Turnover of property by a custodian." That section requires a custodian to deliver any property held by it to the debtor, on the date the custodian acquires knowledge of the bankruptcy filing, and to give an accounting for the period it held the property. 11 U.S.C. § 543(b)(1) and (2). This is a self-executing provision, except that the Court may refuse turnover and accounting if the interests of creditors would be "better served" by permitting the custodian to maintain possession. 11 U.S.C. § 543(d)(1). Because of our ruling *supra* that the Debtor should refit and prepare the vessel for charter service, we deny First Constitution's request for relief from § 543(a).

## C. DISMISSAL

### 1. Bad Faith

■ First Constitution requests dismissal on the ground that the Chapter 11 case was filed in bad faith. We have previously recognized that good faith is an operative, if not an express condition to the filing of a Chapter 11 petition. *In re Donuts of Seekonk, Inc.*, 122 B.R. 172, 174 (Bankr.D.R.I.1990), and we recognize, of course, that a finding of bad faith requires dismissal under § 1112(b).

In *In re I–95 Technology–Industrial Park, L.P.*, 126 B.R. 11 (Bankr.D.R.I.1991), we denied the single secured creditor's motion for dismissal on bad faith grounds, even after considering the *Little Creek/Wentworth* factors. *Id.* at 14. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re Wentworth*, 83 B.R. 705, 707 (Bankr.D.N.D.1988). *See also In re Gonic Realty Trust*, 909 F.2d 624 (1st Cir.1990); *In re Village Green Realty Trust*, 113 B.R. 105, 115–16 (Bankr. D.Mass.1990); *In re Bryan*, 104 B.R. 554, 558 (Bankr.D.Mass.1989). Because the often cited "fourteen factors" cannot always be sensibly applied in a rigid fashion, and since a finding of bad faith, in our opinion, should be more than mere indicia counting, it is this Court's practice to look at the totality of the circumstances. *See I–95*, 126 B.R. at 14–15. *See also Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir.1989); *In re Reiser Ford, Inc.*, 128 B.R. 234, 237 (Bankr.E.D.Mo.1991). Here, although this is a single asset case filed on the eve of foreclosure, there has been shown a bona fide effort and ability to reorganize. *I–95*, 126 B.R. at 15.

### 2. Non-business Chapter 11

■ Finally, First Constitution requests dismissal on the ground that the Debtor is not engaged in an on-going business, and is therefore not entitled to Chapter 11 relief. The United States Supreme Court has recently addressed the issue of "consumer" use of Chapter 11 in *Toibb v. Radloff*, —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Justice Stevens' dissenting opinion

---

**3.** We understand the post-petition arrearage to be approximately $21,000.

**4.** Although not a consideration in formulating our decision herein, it has been represented that possible refinancing of Laramee's other assets would resolve his financial difficulties with the Movant as well as with other unrelated creditors. It has also been represented that should the financing materialize, First Constitution's claim would be provided for. The Debtor is ordered to inform counsel for First Constitution and the Court of the status of said refinancing effort by September 15, 1991, or earlier, if it transpires prior to that date.

in *Toibb* supports First Constitution's argument that a personal, non-business Debtor may not avail himself of Chapter 11 relief, but that view is no longer available to this, or any other Court as precedent. *Id.* at 2202 (Stevens, J., dissenting). The majority held that the plain language of the code and the absence of congressional intent to preclude nonbusiness debtor reorganization, makes Chapter 11 relief available to debtors not engaged in an ongoing business. *Id.* at 2200–01 (opinion of the Court). Although the Sweet Retreat is documented and has been used only as a recreational vessel, the idea of now dedicating the vessel to the charter business is not at all far-fetched.[5] The uncontroverted evidence is that all Virgin Islands charter vessels are documented as recreational. We conclude that since the Supreme Court has condoned the nonbusiness use of Chapter 11, a fortiori the Debtor's proposed business use of the Chapter is clearly authorized.

Accordingly, First Constitution's motion for relief from stay is DENIED, without prejudice, with the conditions set forth herein. First Constitution's motions for relief from turnover and for dismissal are also DENIED, with prejudice.

Enter Judgment consistent with this opinion.

---

5. First Constitution has focused on the fact that Chapter 11 relief should be reserved for "reorganization" and not "organization" of a new business under the protection of the Bankruptcy Code. We cannot reconcile that narrow view with the Supreme Court's recent opinion in *Toibb.*