**In re AURORA INVESTMENTS, INC., Debtor.**

**Bankruptcy No. 91–4129–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 3, 1991.

Richard A. Zeller, Clearwater, Fla., for debtor.

Catherine Peek McEwen, Tampa, Fla., for Barnett Bank of Suncoast, N.A.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a challenge of the right of Aurora Investment, Inc., (Debtor) to seek rehabilitation under Chapter 11 of the Bankruptcy Code. The challenge is presented by a Motion to Dismiss the Debtor's Chapter 11 case, filed by Barnett Bank of the Suncoast, N.A., f/k/a Barnett Bank of Hernando County, N.A. (Barnett). The Motion is based on the contention that the Petition for Relief by the Debtor was filed in "bad faith" therefore it should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Code.

The Motion was scheduled for hearing in due course and the facts which are basically without dispute as established at the evidentiary hearing are as follows:

The Debtor is a Florida Corporation and is the general partner of a Florida partnership, Hernando Woods, Ltd. (Hernando Woods). Hernando Woods was at the time relevant, the owner and operator of an adult congregate living facility (ACLF) located in Hernando County, Florida. The ACLF facility is built on a six-acre tract of land. The facility is adjoined by a 22-acre unimproved parcel. The entire tract is encumbered by a first mortgage held by Barnett. This encumbrance was initially established by several separate notes and mortgages covering separate parcels. When the original notes became due, they were renewed and cross collateralized which resulted in a single mortgage encumbering the entire tract. When Hernando Woods failed to meet its obligations under the mortgage, on June 2, 1990, Barnett filed a suit to foreclose its mortgage lien on the properties encumbered by its mortgage. In the foreclosure action, Barnett named as defendants Dr. Mohan Kutty (Kutty), the President of the Debtor, as Trustee, Mohan Kutty, individually, and one Haresh Lalchand Chulani, and K.C.C. Properties and the Debtor.

At the time of the commencement of this Chapter 11 case, the obligation owed to Barnett secured by the mortgage had a principal balance of $2,681,000.00 plus interest, costs and attorney's fees. The notes secured by the mortgage were short-

term notes and fully matured by their own terms on March 30, 1990. According to the Public Records of Hernando County, the record title to the six-acre tract on which the ACLF facility is built was owned at the time of the commencement of Barnett's foreclosure suit by Mohan Kutty, as Trustee. The adjoining 22 acres was owned by Mohan Kutty, individually.

Prior to and during the pendency of the foreclosure and even at the time of the commencement of this Chapter 11 case, the ACLF facility was leased by Hernando Woods from Mohan Kutty as Trustee and Mohan Kutty individually, and from the Debtor. Under the lease, Hernando Woods was to pay to the lessors $10,000.00 per month and $2,500.00 per month to Aurora Investments for management services, although this fee was never paid. Although the license to the facility was issued to the Debtor and to Hernando Woods, jointly, it is without dispute that Hernando Woods was in full charge of the operation of the ACLF facility; collected all fees from the patients; hired and discharged the employees of the office facility; and paid all operating expenses of the ACLF. There is no question that the Debtor had absolutely no involvement in the day-to-day operation of the ACLF managed by Hernando Woods at the time the Debtor filed its Petition for Relief.

On December 10, 1990, prior to the hearing on the Motion for Summary Judgment filed by Barnett in the foreclosure action, Barnett and the Defendants named in the foreclosure proceeding, including the Debtor, entered into a Stipulation for settlement. The Stipulation provided, *inter alia*, that the Defendants consented to the entry of a Summary Final Judgment in favor of Barnett and that Barnett will not schedule a foreclosure sale earlier than April 2, 1991 in order to give the Debtor an opportunity to refinance the facility and pay off the amount due to Barnett in the amount secured by the mortgage. Paragraph 12 of the Stipulation provides in part:

> The Debtors acknowledge that if they or any one of them files a petition in bankruptcy, (i) such filing will be in bad faith if the primary purpose of the filing is to delay the foreclosure sale date beyond April 2, 1991, or collection of the judgment indebtedness, and (ii) the Bank's interest in the property cannot be adequately protected absent foreclosure of its mortgage lien/security interest.

Pursuant to the Stipulation, the Circuit Court entered a Summary Final Judgment on December 10, 1990, in favor of Barnett in the amount of $3,197,003.16 and set the foreclosure sale for April 2, 1991 at 11:00 a.m., however, since the Debtor filed its Petition for Relief under Chapter 11 on the date of the sale, the sale was not held due to the operation of the automatic stay imposed by § 362 of the Bankruptcy Code.

The record is clear that at the time the Petition was filed, the Debtor was a dissolved corporation. It appears that sometime in July 1991, several months after the commencement of this case, the Debtor took over the operation of the ACLF from Hernando Woods. There is no evidence in this record to show that this transfer was authorized by a formal resolution by the partners of Hernando Woods and there is no evidence of any formal documentation of the transfer of the facility to the Debtor from Hernando Woods to the Debtor. These are the salient facts established at the Final Evidentiary Hearing based on which Barnett seeks dismissal based on the alleged "bad faith" of the Debtor.

It should be noted at the outset that Barnett concedes, as it must, that the Debtor is eligible for relief even though it is a dissolved corporation. The eligibility of a dissolved corporation for relief under the Bankruptcy Code depends on the continuing existence of the corporation after the dissolution under the applicable local law. *In re Wine Farms, Inc.*, 94 B.R. 410 (Bankr.W.D.Va.1988). *In re Markus Enterprises, Inc.*, 91 B.R. 459 (M.D.Tenn. 1988). Section 607.1421(3), Florida Statutes (Supp.1990), provides that "a corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs." Most courts which have considered similar-

ly worded State Statutes found that dissolved corporations are eligible for relief under the Bankruptcy Code. *In re Cedar Tide Corp.*, 859 F.2d 1127 (2d Cir.1988); *In re Tri–Angle Distributors, Inc.*, 102 B.R. 151 (Bankr.N.D.Ind.1989).

■ This being the case, there is no doubt that the Debtor is eligible for relief under Chapter 11, but only to accomplish an ordinary liquidation of its assets unless its corporate status is reinstated. Under the corporate laws of this State, a dissolved corporation may reinstate its corporate status by curing the defaults which caused the dissolution. In fact, this is what occurred in this instance; therefore, the Debtor is clearly eligible for relief under Chapter 11 of the Bankruptcy Code. This leaves for consideration the central issue raised by Barnett in its Motion, which is the alleged bad faith of the Debtor in seeking relief under Chapter 11 of the Bankruptcy Code.

It is Barnett's contention that the facts established at the Final Evidentiary Hearing are without dispute and they clearly support its position that the Debtor's petition was filed in "bad faith" therefore, the Debtor's Chapter 11 case should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Code.

■ Unlike the Bankruptcy Act of 1898, §§ 141–145, the Bankruptcy Code does not require an initial showing by the Debtor that the Petition was filed in good faith. Notwithstanding, it is now established beyond peradventure that the court may dismiss a Chapter 11 case for cause if the court finds that the Petition was filed in "bad faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984).

■ The term "bad faith" is not defined by the Bankruptcy Code, and there is no single fact, the presence or absence of which compels the finding of bad faith. The courts traditionally considered the totality of circumstances surrounding the case when considering a Motion to Dismiss a Chapter 11 case for bad faith filing. *In re Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986), *In re Victory Construction Co.*, 9 B.R. 549, 564 (Bankr. C.D.Cal.1981), *modified*, 9 B.R. 570, *vacated as moot*, 37 B.R. 222 (9th Cir. BAP 1984). Basically, the courts focused on the Debtor's intent to use the reorganization chapter, i.e., was it used for the purpose for which it was intended by Congress; i.e., salvage meaningful economic value. This in turn was construed to mean that the Debtor had a realistic expectation to achieve a legitimate goal either to actually reorganize its financial affairs or effectuate an orderly liquidation of its assets in order to satisfy in full, if possible, or at least a partial satisfaction of the legitimate claims of creditors.

In this connection the courts traditionally considered the following factors:

(1) the lack of a "realistic possibility of an effective reorganization;" (2) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (3) the debtor has only one asset; (4) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (5) the debtor has few, if any, employees; (6) the debtor's major asset is the subject of a foreclosure action; (7) the debtor's financial problem is basically a two-party dispute; (8) the debtor appears to be merely a "shell" corporation; (9) the debtor is seeking "to create and organize a new business rather than to reorganize or rehabilitate an existing enterprise." *In re Albany Partners, Ltd., supra; Little Creek, supra; In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly, Ltd., supra.*

■ In the instant case, it is undisputed that the Petition was filed by the Debtor less than an hour prior to the scheduled foreclosure sale and clearly for the purpose of stopping the foreclosure sale. It is also undisputed that the Suggestion of Bankruptcy filed by the Debtor represented that the Debtor is the fee owner of the six-acre ACLF property when, in fact, it is admitted by the Debtor in its answer to the foreclosure complaint that the subject property

was owned by and in the possession of Mohan Kutty individually or as Trustee, and was not and is still not owned by the Debtor. Thus, the Debtor does not even own the property it seeks to salvage. Moreover, the principals who are now seeking to obtain relief in this court already conceded and stipulated that in the event a Bankruptcy Petition is filed and if it was filed primarily for the purpose of delay, it was filed in bad faith. In order to avoid the natural consequences of this admission of bad faith, the Debtor contends first that the applicable portion of the Stipulation should be read to mean that the admission of bad faith is only valid if the primary purpose was to delay the foreclosure sale and Barnett's interest cannot be adequately protected absent foreclosure of its mortgage lien and this is not the case in the present instance. It is also contended by the Debtor, although not very well articulated, that this Stipulation should not be binding on this Debtor for reasons not explained. There is absolutely nothing in this record to warrant the conclusion that the Stipulation was obtained either by coercion, fraud or by mutual mistake of material facts which have been traditionally recognized as the only valid bases to rescind an agreement, therefore the Debtor cannot escape the legal consequences of the stipulation. *In re Orange Park South Partnership,* 79 B.R. 79 (M.D.Fla.1987); *Duncan Properties, Inc. v. Key Largo Ocean View, Inc.,* 360 So.2d 471 (Fla. 3d DCA 1978).

Be that as it may, it is undisputed that at the time of filing, the Debtor was a dissolved corporation, had no employees, and did not conduct any business in the orthodox sense. The Debtor had no income necessary even to pay the interest accruing on Barnett's claim, whether interest is calculated at the judgment rate or at the higher rate pursuant to the agreed Stipulation, much less the necessary means to fund a plan of reorganization. The Debtor now claims that since it took over the operation of the ACLF facility, it is the operator of a viable business. This proposition is clearly without merit. First, it appears that the Debtor is attempting to use the Bankruptcy Code to create and organize a new business, which attempts have been considered by courts to be one of the indicia of bad faith. *In re Victory Construction Co., supra, In re Randy Homes Corp.,* 86 B.R. 259 (M.D.Fla.1988), *In re Southwest Development Corp.,* 76 B.R. 196 (M.D.Fla.1987).

While in the true sense this is not what is referred to as "new debtor syndrome," uniformly condemned by courts, *In re Natural Land, supra,* it is in effect an attempt to convert an entity which was not engaged in any business on the date of the commencement of the case to acquire assets of the partnership in order to put on itself the mantle of an entity involved in an ongoing business operation which claims to be economically viable. Dismissal is appropriate "when it is evident at the outset that the Debtor is not a viable economic entity and has no realistic possibility of an effective reorganization and it is obvious that the petition was filed for the sole purpose to frustrate and delay the legitimate efforts of secured creditors to enforce their rights. *Id.* at 218. *Albany Partners, supra.* However, even the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith. *Phoenix Piccadilly, supra.* Once it is determined that a petition has been filed in bad faith, dismissal is justified. *In the Matter of Southern Communities, Inc.,* 57 B.R. 215 (Bankr.M.D.Fla.1986).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss be, and the same is hereby, granted, and this Chapter 11 case be, and the same is hereby, dismissed with prejudice.

DONE AND ORDERED.