## In re REALTY TRUST CORPORATION, Debtor.

### Bankruptcy No. 91–00007.

United States District Court, Northern Mariana Islands, Bankruptcy Division.

June 30, 1992.

922

James J. Feder (argued), John W. Mills, III, James J. Feder & Associates, Los Angeles, Cal., Donald C. Williams, Marcia K. Schultz, Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki, Saipan, MP, for debtor Realty Trust Corp.

Curtis Ching (argued), Attorney–Advisor, for the U.S. Trustee, Honolulu, Hawaii, for U.S. Trustee, Sandra J. Wittman.

Gail B. Geiger, Attorney–Advisor for the U.S. Trustee, Agaña, GU.

Theodore R. Mitchell (argued), Jeanne H. Rayphand, Saipan, MP, for Transferor Creditors.

Howard Green (argued), Green, Ning, Lilly & Jones, Honolulu, Hawaii, James S. Sirok, Michael Dotts, Saipan, MP, for Transferee Creditors.

ORDER OF DISMISSAL—11
U.S.C. § 305(a)(1) (1988)

MUNSON, Chief Judge.

THIS MATTER came before the Court on Friday, March 20, 1992 for hearing of

the Court's February 4, 1992 *sua sponte* order to show cause why this case should not be dismissed pursuant to 11 U.S.C. § 305(a)(1) (1988). The Court sought argument as to whether the interests of creditors and the debtor would be better served by such dismissal because this case is not ripe and is better suited for adjudication in Commonwealth of the Northern Mariana Islands (CNMI) courts. The Court also heard the Transferor Creditors' motion to intervene filed on Friday, February 14, 1992 pursuant to 11 U.S.C. § 1109(b) (1988) and Bankruptcy Rule 2018(a).[1]

Debtor Realty Trust Corporation ("Realty Trust") was represented by Mr. James J. Feder, of James J. Feder & Associates, with Mr. Donald C. Williams and Ms. Marcia K. Schultz of Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki as local counsel pursuant to Local Rule 100–1(f). The U.S. Trustee, Sandra J. Wittman, was represented by Mr. Curtis Ching, with Ms. Gail B. Geiger, her Attorney–Advisor, as local counsel. The Article XII claimants ("Transferor Creditors") were represented by Mr. Theodore R. Mitchell. The Transferee Creditors' Committee was represented by Mr. Howard Green of Green, Ning, Lilly & Jones, with Mr. Michael Dotts as local counsel.

## I. BACKGROUND

The underlying issue in this case concerns the alleged invalidity under the law of the CNMI of certain real property leases, based upon failure to comply with the ethnic property ownership qualifications contained in Article XII of CNMI Constitution, *reprinted in* Commonwealth Code (CMC) at B–301, B–334—B–335, enacted pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant), § 805(a), Act of Mar. 24, 1976, Pub.L. 94–241, 90 Stat. 263, *as amended by* Pub.L. 98–213, § 9, 97 Stat. 1461, Pub.L. 99–396, § 10, 100 Stat.

840, *reprinted in* 48 U.S.C. § 1681 (1988) statutory note at 209, 214–15, *and* CMC at B–101, B–116. *See Wabol v. Villacrusis,* 898 F.2d 1381 (9th Cir.1990), *modified* 908 F.2d 411 (9th Cir.1990), *modified* 958 F.2d 1450 (9th Cir.1992) (upholding Covenant § 805(a) against equal protection challenge) *motion for stay filed pending petition for cert.* (June 10, 1992).

Realty Trust engaged in real property development and investment on Saipan between 1980 and 1983 involving at least forty parcels of land. Whether or not Realty Trust later was validly dissolved is hotly contested. The property has all been sold and much of it leased. Today it is alleged to be worth approximately $498 million, and Realty Trust is in the chain of title for some one hundred land owners and lessees. The Transferor Creditors are persons of Northern Mariana Islands (NMI) descent who first transferred certain real property to Realty Trust. They seek to have the transactions declared void *ab initio* so as to recover the now much more valuable land. After Realty Trust conveyed the property, the land passed directly or indirectly to various Intermediary Transferee Creditors, who have divested themselves of all interests in the property, and Ultimate Transferee Creditors, who now find themselves with devalued fee (remaindermen) or leasehold property. The Ultimate Transferee Creditors face banks reluctant to lend money to finance improvements to their property, and those Ultimate Transferee Creditors with forty or fifty-five year leases watch their assets wasting away.

The Transferee Creditors, including San Roque Beach Development Company and others, seek to hold Realty Trust liable if the transactions are ultimately determined under CNMI law to be void. They seek costs of defending their title and compensation for the diminution in market value caused by the alleged failure of Realty

---

1. The Court's order of 24 February 1992 granting leave for the Transferor Creditors to intervene was premised on the apparent agreement of all the parties at the January 31, 1992 hearing that these "Article XII Claimants" did qualify as

an "interested party" and had standing to argue. Because Debtor objects and no hearing was conducted, that portion of the order granting leave to intervene is vacated.

Trust to comply with Article XII, and have mentioned possible fraud or malpractice claims against the principals of Realty Trust.

Realty Trust is no longer a going concern. Its assets consist of claims for restitution if the transactions are voided, and potential claims against its principals and attorneys.

On April 12, 1991, this court issued an order *sua sponte* to show cause why a predecessor involuntary Chapter 7 case filed by Creditor San Roque Beach Development Company should not be dismissed. *In re Realty Trust*, Bankruptcy No. 91–00001 (D.N.Mar.I. Apr. 12, 1991). The hearing of oral argument was continued several times pursuant to stipulation, until Saturday, October 19, 1991. As the Court was preparing to hear argument and issue an order in that case, Realty Trust and San Roque Beach Development Company agreed on October 16, 1991 to dismiss the case.

This voluntary Chapter 11 case was filed on December 18, 1991 by Realty Trust. On Friday, January 31, 1992 the Court heard Realty Trust's unsuccessful motions to establish a claims bar date pursuant to Bankruptcy Rule 3003(c)(3) and for approval of a settlement agreement pursuant to Bankruptcy Rules 9019(a) and 9001(10) by which the principals of Realty Trust would have funded this case for $65,000 in exchange for release from liability. On February 4, 1992 the Court issued another *sua sponte* order to show cause why this case should not be dismissed. The Court noted, "Unlike the going concerns referred to at oral argument by the debtor in the *[In re] A.H. Robins [Co.*, 880 F.2d 709, 714 n. 8, 720–22, 749 n. 45 (4th Cir.1989) ] and [*In re Johns–] Manville [Corp.*, 36 B.R. · 727, 738–39 (Bankr.S.D.N.Y.1984) ] cases, there is no business to reorganize. As yet, the assets of and claims against Realty Trust seem highly speculative, unripe in the extreme." *In re Realty Trust*, Bankr. No. 91–00007 (D.N.Mar.I. Feb. 4, 1991).

## II. LEAVE TO INTERVENE

At the outset, the Court must determine whether the Article XII claimants ("Trans-

feror Creditors"), who filed a motion for leave to intervene, have standing to argue. Realty Trust appears to concede that point, focusing on whether the Transferor Creditors should be characterized as intervenors or creditors. If the latter, Realty Trust implies granting leave to intervene is superfluous. Moreover, Realty Trust argues that in attempting to be characterized as intervenors rather than creditors, the Transferor Creditors are acting in sanctionable bad faith, to avoid the requirements of 11 U.S.C. § 328(a) (1988) (court approval of professional [attorney] employment) and Bankruptcy Rules 2014(a) (same) and 2019(a) (creditors' statement). Realty Trust renews its *ex parte* application to compel the Transferor Creditors to file a creditors' statement.

Prior to oral argument the central assertion of the Transferor Creditors was that this case is unsuitable for bankruptcy and warrants dismissal. To admit that they are "creditors" was thought to be inimical to that contention. No party has cited case authority that granting leave to intervene would have been inconsistent with a subsequent characterization by the Court of the Article XII claimants as creditors, with or without their acquiescence, after proper notice.

At oral argument, however, Transferor Creditors conceded that they were in fact creditors as defined by 11 U.S.C. § 101(10) (Supp. II 1990), and stated that they would file a creditors' statement as required by Bankruptcy Rule 2019(a). Transferor Creditors also withdrew their motion to intervene.

■ Realty Trust seeks sanctions against the Transferor Creditors for filing their motion to intervene. There has been no convincing showing that counsel for the Transferor Creditors was motivated by bad faith. Rather, their counsel, who is not a bankruptcy specialist, sought to avoid unanticipated consequences of making an inadvertent concession of jurisdiction under 28 U.S.C. § 1334 (1988). Transferor Creditors are desirous of preventing a possible rejection in an omnibus bankruptcy pro-

ceeding of their claims under CNMI law for return of the contested property. Apparently they anticipate a more favorable outcome in the CNMI courts, notwithstanding the fact that when applying local law this court is normally bound to follow local precedent. *See, generally,* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 (2d ed. 1982 & Supp. 1992) Such precedent is not lacking, although not yet final. *See, e.g., Aldan-Pierce v. Mafnas,* No. 89–003, 1991 WL 165048 (N.Mar.I. July 5, 1991), *appeal docketed,* No. 91–16240 (9th Cir. Aug. 14, 1991); *Ferreira v. Borja,* No. 90–047, 1992 WL 62894 (N.Mar.I. Feb. 18, 1992), *appeal docketed,* No. 92–15523 (9th Cir. Mar. 30, 1992); *Cepeda v. Hefner,* No. 90–057, 1992 WL 135905 (N.Mar.I. Apr. 24, 1992) (remanding to Superior Court). Realty Trust's motion for sanctions is DENIED.

### III. ISSUES BEYOND THE SCOPE OF THE COURT'S ORDER

■ Various parties have addressed several issues not raised by the Court's *sua sponte* order to show cause why this case should not be dismissed pursuant to 11 U.S.C. § 305(a)(1) (1988) filed February 4, 1992. Motions have been made to dismiss pursuant to 11 U.S.C. § 1112(b) (1988) for bad faith, for sanctions, and to convert this case from a Chapter 11 to a Chapter 7 proceeding. The corporate status of Realty Trust has been addressed despite the Court's explicit directive not to brief this issue.[2] Argument has also been made for abstention under 28 U.S.C. § 1334(c) (1988), which is at least logically related to the

question of whether the Article XII issues are ripe for resolution and whether their adjudication in this forum is the best use of litigants' and judicial resources. One purpose of the Court's Order to Show Cause was to narrow the issues prior to considering the inevitable jurisdictional motions and adversary proceedings. These other issues addressed by some of the parties could fill volumes if argued fully. While the court does not seek to preclude consideration of any relevant issue, there is no reason to consider each such issue now. Significantly, no notice was provided to the other parties that they would be argued until the first set of memoranda were filed on March 2, 1992. Therefore, the Court will not consider these issues that are beyond the scope of the court's order.[3]

### IV. DISMISSAL UNDER 11 U.S.C. § 305(a)(1)

■ Subsection 305(a) states, "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a) (1988). One purpose of this section is to facilitate out-of-court workouts and stipulated settlements, such as where a few recalcitrant creditors in an involuntary case seek to extract full payment. S.Rep. No. 989, 95th Cong., 2d Sess., 35–36 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5821–22, *quoting* H.R.Rep. No. 595, 95th Cong., 1st Sess., 325 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad-

---

**2.** The Court has expressed no opinion on the validity of the prior dissolution of Realty Trust or its capacity to be a debtor. Rather, the Court sought to resolve the issue of whether this case was suitable for bankruptcy before considering the complex factual and evidentiary questions surrounding Realty Trust's existence.

**3.** In view of the dismissal of this action, as set forth below, the Court need not rule on Realty Trust's oral motion for a protective order against depositions sought to be taken by Transferor Creditors. Transferor Creditors endeavored to establish a factual basis for imposing sanctions against Realty Trust for filing the Chapter 11 petition by deposing various attor-

neys involved in setting up and dissolving Realty Trust, and participating in this matter. *But see* Fed.R.Civ.P. 11, Advisory Committee Notes, 1983 Amendment, penultimate paragraph (discovery concerning sanctions under Rule 11 should be conducted only by leave of court, and then only in extraordinary circumstances). The Court does note, however, that there is no right, absent agreement, to conduct depositions at the office of the deponents, however laudable the alleged motive of efficiency and convenience to deponents. If deponents refuse to cooperate or perform valid discovery obligations, the remedy is a motion to compel. Fed.R.Civ.P. 37.

min.News 5787, 6281. However, the statute is not so limited.

■ The Court will consider five interrelated factors in evaluating the best interests of creditors and the debtor for determining whether to dismiss the case pursuant to 11 U.S.C. § 305(a)(1):

(1) whether the case involves issues of unsettled non-bankruptcy law,

(2) the availability of another forum,

(3) economy and efficiency of administration,

(4) prejudice to the parties, and

(5) the purposes of bankruptcy.

See In re Business Information Co., 81 B.R. 382, 387 (Bankr.W.D.Pa.1988). As indicated below, a balancing of these factors indicates that dismissal of this case is in the best interests of creditors and the debtor.

## A. ISSUES OF UNSETTLED NON–BANKRUPTCY LAW

■ The fundamental question of law in this case is whether the land transactions engaged in by Realty Trust complied with Article XII of the CNMI Constitution. If not, and the land is returned to the Transferor Creditors, are Realty Trust, the Intermediary Transferee Creditors, or the Ultimate Transferee Creditors entitled to restitution? What would be the liability of the Realty Trust principals and their counsel? These are questions of non-bankruptcy law.

The questions of corporate capacity to own land, restitution to Intermediary Transferees and Ultimate Transferees, and potential liability of non-NMI land investors and their counsel if the transactions are deemed violative of Article XII, remain to be addressed by the CNMI Supreme Court. Indeed, the cases this bankruptcy

proceeding would forestall may well provide the vehicles for issuance of such guidelines.[4]

Are the Transferor Creditors' fraud claims against Realty Trust's principals and counsel [5] unlikely to succeed, as Realty Trust asserts? Perhaps, but this court won't prejudge the facts, or the law to be established.

The numerous issues of unsettled law implicated in this action suggest that utilizing another forum, the CNMI courts, would be more appropriate for litigating these non-bankruptcy public policy issues. By urging the discharge of sweeping potential Article XII obligations through bankruptcy, Realty Trust is in essence asking this court to overrule the CNMI Article XII jurisprudence de facto. If bankruptcy becomes a method of avoiding the possible practical consequences of Article XII, a few investors with widespread landholdings could have effectively avoided the provisions of Article XII and Covenant § 805(a) that were upheld by the Ninth Circuit in Wabol v. Villacrusis, 958 F.2d 1450 (9th Cir.1990) motion for stay filed pending petition for cert. (June 10, 1992).

■ These issues of unsettled law might never be reached if the Realty Trust land transactions are held to be valid. But in that event there would be no need to file bankruptcy. The very filing of this case presupposes that the unsettled questions of law will be decided adversely to the debtor. When bankruptcy is used as a prophylactic measure to secure an alternative forum for resolution of unsettled issues of state or local law, and one of the likely local law outcomes would obviate the need for bankruptcy entirely,[6] the presence of such unsettled non-bankruptcy issues is a factor counseling dismissal of the case pursuant

**4.** The Transferee Creditors argue that all small jurisdictions have many areas of unsettled law, and that to abstain on that basis would be contrary to decades of bankruptcy experience. However, unsettled non-bankruptcy law is a recognized basis for abstaining under 11 U.S.C. § 305(a)(1). In re Business Information Co., 81 B.R. at 387. It is particularly appropriate here, because Covenant § 805 and Article XII are unique in American jurisprudence.

**5.** In view of the dismissal of this case, it is unnecessary to settle the apparent conflict posed when the debtor's counsel or associates are the same as or are employed by attorneys whose alleged fraud or malpractice constitutes one of the debtor's main assets.

**6.** Realty Trust has no business, no cash flow, no trade creditors, no business assets. Its very existence as a matter of CNMI law is doubtful.

to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.

## B. AVAILABILITY OF ANOTHER FORUM

All parties recognize that this court has exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a) (1988). There is no other forum in the NMI which can provide the far-reaching relief which Congress has authorized this court, sitting in bankruptcy pursuant to 28 U.S.C. § 152(a)(4) (1988).

Realty Trust points out that easy access to the bankruptcy courts is generally a benefit to both creditors and debtors, which Congress has endorsed through expansive definitions of "claim," 11 U.S.C. § 101(5) (Supp. II 1990); "creditor," 11 U.S.C. § 101(10) (Supp. II 1990); and "debt," 11 U.S.C. § 101(12) (Supp. II 1990). *See Bank of Commerce v. Freels (In re Southern Indus. Banking Corp.),* 46 B.R. 306, 310–13 (Bankr.E.D.Tenn.1985); *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). However, utilizing the bankruptcy courts may be a detriment to the parties if the dispositive issues may be resolved elsewhere more economically and efficiently. *See* Part IV.C., *infra.*

■■■ Realty Trust is correct that Article XII equitable causes of action by Transferor Creditors, such as those pending in the CNMI courts,[7] are dischargeable in bankruptcy. These claims of right to an equitable remedy for "breach of performance" (non-compliance with Article XII) give rise to a disputed "right to payment" as explained by *Bank of Commerce* and *Kovacs,* bringing them within the definition of "claim" set forth in 11 U.S.C. § 101(5) and thus within the ambit of bankruptcy law. The Transferor Creditors' causes of action are not dependent upon the occurrence of any future event. While disputed, they are not contingent, and are proper claims in bankruptcy. On the other hand, the Intermediary and Ultimate Transferee Creditors' causes of action spring to life if and only if Transferor Creditors prevail in their lawsuits. Thus, their claims are contingent. Contingent claims are also recognized as dischargeable claims in bankruptcy. 11 U.S.C. § 101(5)(A).

■■■ While CNMI courts cannot grant discharges in bankruptcy, where issues of first impression are pending in local courts it is ordinarily they who should determine whether liability exists. *In re Business Information Co.,* 81 B.R. at 387. This determination may make resort to bankruptcy unnecessary. Even if Realty Trust is found to have been ineligible to hold property, making all its transactions void *ab initio,* Realty Trust's lack of business, cash flow, trade creditors, and business assets, and its questionable existence (yet another question of CNMI law)[8] could render bankruptcy a waste of resources.

■■■ Realty Trust argues that the foregoing seems similar to traditional abstention doctrines or bankruptcy abstention under 28 U.S.C. § 1334(c) (1988). Bankruptcy abstention can be in the interest of justice, or in the interest of comity with State courts or respect for State law. *Id.* Abstention or certification would allow the CNMI judiciary to determine whether or not Realty Trust still has a legal existence and whether it was ever qualified to hold title to land. Such comity abstention is authorized for a particular adversary proceeding under a bankruptcy case, but not a whole case itself. *Id.* Both bankruptcy abstention in the interest of comity with local courts and in the best interests of creditors and the debtor are not reviewable by appeal or otherwise by a court of ap-

---

7. *See, e.g., Castro v. Realty Trust Corp.,* No. 88–707 (N. Mar. I. Super. Ct.); *Iglecias v. Realty Trust Corp.,* No. 88–704 (N. Mar. I. Super. Ct.); *Tudela v. Realty Trust Corp.,* No. 88–715 (N. Mar. I. Super. Ct.); *Dela Cruz v. Nikko Hotel,* No. 91–259 (N. Mar. I. Super. Ct.).

8. "The eligibility of a dissolved corporation for relief under the Bankruptcy Code depends on the continuing existence of the corporation under the applicable local law." *In re Aurora Investments, Inc.,* 134 B.R. 982, 984 (Bankr. M.D.Fla.1991) (citations omitted). *See also In re Liberal Mack Sales, Inc.,* 24 B.R. 707, 709–10 (Bankr.D.Kan.1982); *In re Anderson,* 94 B.R. 153, 156–57 (Bankr.W.D. Mo.1988).

peals. 28 U.S.C. § 1334(c)(2) (1988); 11 U.S.C. § 305(c) (1988).

In an appropriate situation, such as where there are an ongoing business, cash flow, trade creditors, or business assets, and a positive juridical existence, it might not be in the best interests of creditors and the debtor to dismiss or suspend the entire case, and a motion under 28 U.S.C. § 1334(c) to abstain from a particular adversary proceeding could be well taken. But here, the necessity for bankruptcy may be bypassed through CNMI judicial rulings on Realty Trust's capacity to hold NMI property under Article XII and on Realty Trust's purported dissolution. Accordingly, the basis for abstaining today is more than comity. Here, the added factor present is that the burden of administering a complex bankruptcy estate may be rendered moot by the resolution of CNMI law.

The Court recognizes that there is no ongoing business requirement for filing bankruptcy, *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *In re U.S. Advertising, Inc.,* 131 B.R. 537, 540–41 (Bankr.D.R.I.1991), and that Chapter 11 liquidations are authorized, despite the seeming incongruity of there being nothing to "reorganize." However, this court will consider all relevant factors in determining whether such a filing is in the best interests of creditors and the debtor or, when appropriate, in the interest of justice, or in the interest of comity with local courts or respect for local law.

The full measure of relief authorized by a bankruptcy court, such as discharge of the disputed and contingent claims against Realty Trust held by Transferor and Transferee Creditors, respectively, may not be necessary in this case. It is not in the best interests of creditors and the debtor for this court to issue an advisory opinion on CNMI law, particularly given the condition of the debtor, when potentially dispositive issues may be resolved by CNMI courts. While this court has the power to consider and discharge the claims, an alternative forum is available. The claims will either vanish or become ripe after CNMI adjudication. The presence of an another forum is a further factor counseling dismissal of the case pursuant to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.

## C. ECONOMY AND EFFICIENCY OF ADMINISTRATION

In Part IV.B. above, the Court discussed the existence of an alternative forum, and assumed without elaboration that resolution by CNMI courts of Realty Trust's legal existence and capacity to hold land under Article XII would be economical and efficient.

Realty Trust argues the opposite. Realty Trust asserts that there is no statute of limitations on Article XII restitution claims by Transferors. Given piecemeal lawsuits by various Transferors or Transferees, possible findings of fraud or malpractice by the principals and attorneys of Realty Trust, and likely appeals from the CNMI Superior Court to the CNMI Supreme Court and Ninth Circuit Court of Appeals, Realty Trust predicts Article XII claims concerning Realty Trust will come back to the Bankruptcy Division of this court over the next six to ten years. Litigating the issues seriatim, Realty Trust argues, is not efficient.

On the other hand, Bankruptcy Rule 1001 calls for the "just, speedy, and inexpensive determination of every case and proceeding." *Id.* Realty Trust wants an omnibus bankruptcy case with a prompt bar date so that the various disputed and contingent claims against it may be speedily discharged. Unfortunately, it is not so simple as that. Allowing this case to go forward would undoubtedly trigger the filing of numerous adversary proceedings to resolve issues of fact and unsettled law such as corporate capacity to hold title to land under Article XII, restitution to Intermediary Transferees and Ultimate Transferees, and potential liability of non-NMI land investors and their counsel. Given the absence of Realty Trust assets (except claims for restitution) and the assertions made against individuals associated with Realty Trust, there probably will be attempts to disqualify counsel and to pierce

the corporate veil, perhaps resulting in personal bankruptcy filings in other districts. There certainly will be motions to abstain from particular adversary proceedings pursuant to 28 U.S.C. § 1334(c).

As the U.S. Trustee points out, bankruptcy litigation can be expensive and specialized. It requires knowledge or experience not in every day use among CNMI attorneys. Three out of four attorneys who argued this motion were admitted to practice before this court *pro hac vice*.

Beyond the additional attorney fees creditors will incur, there will be fee applications. The hiring of accountants and professionals for the debtor will deplete the "estate" and have priority over creditors' claims. Disclosure statements will be prepared and filed, creditor meetings and votes taken, and creditor plans filed, requiring confirmation under the complex provisions of 11 U.S.C. § 1129 (1988). A "cram down"[9] would make things even more complicated. 11 U.S.C. § 1129(b)(1) (1988). "Property of the estate" is defined as all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1) (1988). Realty Trust has no right to sue anyone for restitution unless there is a judgment against it. There will undoubtedly be a bankruptcy "fishing expedition" to find assets. Bankruptcy Rule 2004.

Even if the Court retained jurisdiction of the case, specific adversary proceedings would likely proceed in CNMI courts. Regardless, given the huge amounts potentially at stake, and the importance of Article XII in the CNMI, this case cannot be economically and efficiently administered in any forum. It is clear, however, that an omnibus bankruptcy proceeding will offer no improvement in that regard. The complexity and extreme expense of administering this case in bankruptcy is a further factor counseling dismissal of the case pursuant to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.

## D. PREJUDICE TO THE PARTIES

Realty Trust has no business, no cash flow, no trade creditors, no business assets. The reason it is a defendant in the CNMI Superior Court cases is that it is an "indispensable party." While Realty Trust raises the specter of a race to judgment over many years, it appears the corporation was defunct for several years and it also appears to be judgment-proof. Indeed, it is not known how this case would be funded; the bankruptcy estate itself could end up bankrupt. The real parties in interest who might bear the financial burden of money judgments against Realty Trust, namely its principals and attorneys, have not appeared. An early bar date, which Realty Trust has sought, would benefit one side, those principals and attorneys, to the detriment of creditors without notice or counsel.

The Transferor Creditors do not claim to be prejudiced by dismissal of this action. Instead, they encourage dismissal so that they may resume the CNMI Superior Court lawsuits in which they are plaintiffs.

The Transferee Creditors claim the most concrete and severe prejudice; the Court is sensitive to their plight. While some of their number may include sophisticated investors, such as corporate investment companies, others are individual citizens who bought single lots hoping to build a family home. Their dreams are dashed by the cloud on their titles and their inability to gain financing or sell the lots.

Yet as the U.S. Trustee notes, bankruptcy is not a free legal aid service. If the Ultimate Transferee Creditors, particularly those with forty year leaseholds that are diminishing in value daily, are truly concerned that they will be unable to build or sell, they are free to bring quiet title actions in the local CNMI courts. Dismissal of this action does not foreclose such relief.

---

9. "Cram down" is a popular expression for the power of the bankruptcy court to force confirmation of a reorganization plan notwithstanding the dissent of one or more classes of creditors or ownership interests. 5 *Collier on Bankruptcy* ¶ 1111.02 n. 4 (L. King 15th ed. 1992); *see In re Griffiths,* 27 B.R. 873, 876 (Bankr.D. Kan.1983).

They may bring such actions individually or as a class action, but the choice is up to each Ultimate Transferee. A class action is likely to be less expensive than an omnibus bankruptcy proceeding, which requires attorneys with specialized knowledge of bankruptcy procedure. Naturally, a class action would not be cheap either. But a class action offers a vital feature that a bankruptcy does not: the ability to opt out. *See* Fed.R.Civ.P. 23(c)(2) and CNMI analogue.

For tactical reasons, some of the CNMI Article XII cases have been stayed by mutual consent to allow a test case to proceed. Some Ultimate Transferees who have built homes might prefer living with uncertainty as opposed to a prompt judgment against them. In short, the prejudice to the Transferee Creditors is not as dire as has been presented; it may be mitigated by resort to a different forum.

The lack of substantial prejudice to the parties is a further factor counseling dismissal of the case pursuant to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.

## E. PURPOSES OF BANKRUPTCY

Among the goals of the bankruptcy system are providing a fresh start, putting an end to litigation over debts, rehabilitating individuals and businesses, protecting investors and employees, and distributing assets fairly. Realty Trust has no business, no cash flow, no trade creditors, no business assets. Its very existence as a matter of CNMI law is doubtful.

Yet the existence of an ongoing business is not an absolute requirement for a Chapter 11 filing. *Toibb,* — U.S. —, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Speculative, disputed or contingent claims are permissible because Congress has given bankruptcy courts a great deal of latitude to consider the equities and entertain a wide variety of "claims." 11 U.S.C. § 101(5) (Supp. II 1990); *See Bank of Commerce,* 46 B.R. at 310–13.

Nevertheless, the courts have considered the totality of the circumstances in determining whether to dismiss a Chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b) (1988) upon a finding that the petition was filed in bad faith. *In re Aurora Investments, Inc.,* 134 B.R. 982, 985 (Bankr.M.D.Fla.1991), *citing In re Victory Constr. Co.,* 9 B.R. 549, 564 (Bankr. C.D.Cal.1981), *modified* 9 B.R. 570, (Bankr. C.D.Cal.), *vacated as moot* 37 B.R. 222 (9th Cir.B.A.P.1984); *In re Business Information Co.,* 81 B.R. 382, 385 (Bankr.W.D.Pa. 1988). The U.S. Trustee urges such a finding, although this issue was not raised in the Court's order to show cause nor briefed by the other parties. In the absence of notice, dismissal on this basis would violate due process, and the Court declines to rule on whether Realty Trust filed its petition in bad faith for the benefit of unnamed principals and attorneys.

Nevertheless, a bad faith analysis, as set forth in *In re Aurora Investments, Inc.,* 134 B.R. at 985, does have something in common with determining the best interests of creditors and the debtor. The courts have focused on the intent to use the reorganization for the purpose intended by Congress: to salvage meaningful economic value. *Id.* This in turn has been construed to mean that the debtor had a realistic expectation to achieve a legitimate goal either to actually reorganize its financial affairs or effectuate an orderly liquidation of its assets in order to satisfy in full, if possible, or at least partially satisfy the legitimate claims of creditors. *Id.* Without evidentiary hearings, at this time the Court cannot determine Realty Trust's intent to meet the goal of effectuating an orderly liquidation of its assets in order to partially satisfy the legitimate claims of creditors.

Those assets are still speculative unless and until the Transferor Creditors prevail on their Article XII claims. Realty Trust presently has no right to sue anyone for restitution. Given the lack of ripeness of the principal relevant bankruptcy goal, a fair distribution of "assets," dismissal is warranted.

There is certainly no need to give Realty Trust a fresh start or to protect its employ-

ees. Realty Trust's investors need protection only to the extent of alleged misfeasance. Rather than putting an end to litigation over debts, continuation of this case will foster it, requiring all Realty Trust's Transferee Creditors to become involved— even those facing no current Article XII claims.

Consideration of the goals of bankruptcy is a further factor counseling dismissal of the case pursuant to 11 U.S.C. § 305(a)(1) as being in the best interests of creditors and the debtor.

## V. CONCLUSION

Weighing the issues of (1) whether the case involves issues of unsettled non-bankruptcy law, (2) the availability of another forum, (3) economy and efficiency of administration, (4) prejudice to the parties, and (5) the purposes of bankruptcy, indicates that dismissal of this case is in the best interests of creditors and the debtor. Realty Trust and the Transferee Creditors have emphasized these factors in isolation, such as the probable delay in waiting for resolution of these complex issues by the CNMI judiciary, lack of any ongoing business requirement for filing bankruptcy, and alleged prejudice if this case is dismissed. The Court is not persuaded.

More important than any one factor alone, moreover, is the totality of the circumstances. Currently, all five factors support dismissal, but there is no unanimity requirement. These five issues together lead the Court to conclude that it is in the best interests of creditors and the debtor that the Court abstain pursuant to 11 U.S.C. § 305(a)(1) (1988). Accordingly, this case is DISMISSED.

IT IS SO ORDERED.