## In re ST. MARIE DEVELOPMENT CORPORATION OF MONTANA, INC., Alleged Debtor.

### No. 05–62166–7.

United States Bankruptcy Court, D. Montana.

Oct. 17, 2005.

Order denying reconsideration Dec. 5, 2005.

---

Ronald R. Arneson, Billings, MT, for Petitioners.

Joseph V. Womack, Waller & Womack P.C., Billings, MT, for Alleged Debtor.

## MEMORANDUM of DECISION

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 17th day of October, 2005.

After due notice, a hearing was held on September 13, 2005, on the Involuntary Chapter 7 Petition to adjudicate St. Marie Development Corporation ("SMDC") a Chapter 7 debtor pursuant to 11 U.S.C. § 303(b). The petition was filed by R.W. Dunseth ("Dunseth"), Glacier Trail Management Service ("GTMS") by Marv W. Bethea, President, and Patrick Suminski ("Suminski"), and alleges (1) petitioners are eligible creditors of SMDC, (2) which is a person against whom an order for relief may be entered under Title 11 of the United States Bankruptcy Code, and (3) that the alleged Debtor, SMDC, is generally not paying such alleged debtor's debts as they become due and such debts are not subject to bonafide dispute. The petition recites Dunseth is owed $55,196.06, GTMS is owed $137,750.00, and Suminski is owed $7,500.00. Attached to the petition is a list of alleged creditors totaling $388,707.00. SMDC filed an answer and counterclaim to the petition stating Dunseth and GTMS debts are contingent as to liability and subject to bonafide dispute. Further, the answer alleged that Suminski failed to comply with F.R.B.P.2003(a) regarding transfer of claims. This matter was subsequently cured by an amended petition. SMDC admits sections 1 and 2 of the petition but denies section 3. The counterclaim alleges the petition was filed in bad faith and seeks an award of attorney's fees and costs.

On August 19, 2005, the petitioners filed an amended petition (Dkt. No. 9) to add additional creditors, namely, North Valley County Condominium Association ("NVCCA"), through Maynard Edson, President, in the amount of $28,400.00, Al-

len Wilber in the sum of $893.13, Ronald and Elsie Spiers in the sum of $20,000.00 each and Natwick Associates Appraisal Services in the sum of $14,655.00. The Court, without hearing, granted the amendment by Order filed August 22, 2005 (Dkt. No. 10). Thereafter, on August 24, 2005, SMDC filed an Amended Answer and Counterclaim (Dkt. No. 12) alleging the claims of Dunseth, GTMS, NVCCA, Spiers and Natwick are contingent obligations, subject to a bonafide dispute, and that Wilber's debt was paid in full post petition on August 22, 2005. The Amended Answer admitted sections 1 and 2 of the petition and as to paragraph 3, admits SMDC has not and is not paying some of its debts as they become due, but that SMDC has paid a significant amount of debt and is not incurring additional debts that it cannot pay as they become due. Further, on September 11, 2005, SMDC filed a motion to dismiss the amended petition (Dkt. No. 30) on grounds (1) the best interest of creditors would be met by dismissal, (2) the petition has been filed in bad faith, (3) no real benefit would be served by putting SMDC into bankruptcy, and (4) additional infusion of capital may be obtained from recent events involving Hurricane Katrina.[1] The counterclaim again seeks an award of attorney's fees and costs pursuant to 11 U.S.C. § 303(i).

At the hearing, the petitioners were represented by counsel Ronald R. Ameson and SMDC was represented by its counsel, Joseph Womack. Witnesses called by the petitioners were Keven Davick, R.W. Dunseth, Patrick Suminski[2] and M.W. Bethea. Moreover, prior to the hearing, Natwick Appraisal filed a letter to withdraw as a petitioner. Further, SMDC filed a motion to dismiss petitioners Natwick and each of the Spiers on grounds none of those petitioners appeared at the duly noticed deposition hearing and each failed to appear at the Court hearing in support of their petition.

As to the dismissal of Natwick and Spiers as petitioners, the rule is well-settled that the Court may not permit a petitioning creditor to withdraw if to do so would defeat the Court's jurisdiction over the petition. *In re Molen Drilling Co., Inc.*, 68 B.R. 840, 842 (Bankr.Mont. 1987). However, on this issue, Natwick voluntarily withdrew before the hearing, and refused to attend the taking of his deposition. Spiers also failed to attend the taking of their depositions and did not appear at the hearing with testimony to support the petition. In this matter, it appears to be undisputed that SMDC has more than 12 creditors and dismissal of Natwick and Spiers still leaves 5 creditors as petitioners, although 3 are subject to dispute. If SMDC's argument that a bonafide dispute exists is sustained and Wilber and Suminski are retained as petitioning creditors, the Court would lack jurisdiction over the petition if Natwick and the Spiers are dismissed as petitioners, since § 303(b) requires three bonafide creditors with an aggregate claim of at least $12,300.00 (more than the value of any lien on property of the debtor). As held in *Matter of Claxton*, 21 B.R. 905, 908 (Bankr.E.D.Va.1982), cited in *Molen, supra*, post-petition payment of one or

---

1. No evidence was introduced into the record at the hearing to sustain this latter allegation and it is therefore deemed abandoned.

2. Subsequent to the closing of the hearing, Suminski filed an affidavit dated September 15, 2005 (Dkt. No. 46) alleging certain facts to which affidavit SMDC filed an objection (Dkt.

No. 48). The Court now sustains the objections and rejects the affidavit on grounds it is hearsay, not subject to cross examination, filed after the close of testimony and does not comply with the Federal Rules of Bankruptcy Procedure.

more of the petitioning creditors does not deprive the Court of jurisdiction or require a dismissal of the petition.

■ However, the fact that Natwick seeks voluntary dismissal of the petition, apart from any payment, and together with Spiers' failure to appear at the hearing or attend the taking of their deposition by SMDC, it is the Court's judgment that each of those parties as petitioners has been disqualified as petitioners under these circumstances for failure to prosecute the petition with diligence. This still leaves five petitioners who claim there are creditors of SMDC.

If, as SMDC, alleges, the evidence supports the position that these 3 claims are subject to bonafide dispute, then the jurisdictional requirements of § 303(b) are not met. Moreover, the issue of the petition being filed in bad faith must also be decided.

At the hearing, SMDC called as witnesses, Craig Martinson, as an expert witness on Chapter 7 bankruptcy matters, Philip DeFelice, attorney for Debtor is a state court action, Kenneth Davick, President of SMDC, Irving Johnson, realtor, Dave Pippin, Valley County commissioner, Jerry Ketchum, officer of North Valley Sewer and Water District and Eleanor Lindsey, President of the St. Marie Condominium Association.

The Petitioners introduced into evidence, without objection, Exhibits 1 and 3 through 40. Exhibit 2 was admitted into evidence over objection. Petitioners also sought to introduce into evidence on behalf of NVCCA, Exhibits 42 through 67, through Mr. Bethea, rather than the President of NVCCA, Edson, who signed the petition on behalf of NVCCA. The Court sustained SMDC's objections on grounds of lack of foundation, but now, upon review of each exhibit (copies of which were not presented to the Court for its use at the hearing), the Court now admits into evidence Exhibits 42 through 67, except for Exhibits 46, 50, 64 and 65, which are all duplicate exhibits.

SMDC introduced into evidence without objection Exhibits P, BBB, M, A through F, UU, Y, A, AA, ZZ and AAA in that order. At the conclusion of the evidence, both parties having rested, the Court deemed the record closed, and granted the parties 15 days to filed simultaneous memoranda in support of their respective positions. Each party on September 28, 2005, filed a Memorandum (Dkt. Nos. 49 and 50), although petitioners' Memorandum does not designate by name the petitioning parties.

FINDINGS OF FACT

SMDC derives its organization from an entity known as Valley Park, Inc. which was formerly a reorganized debtor under Chapter 11 in this Court beginning in 1997. (Case No. 97–12587), Exhibit 1. SMDC, as successor to Valley Park, Inc. sought Chapter 11 relief in Case No. 03–61105–11 in this Court, Exhibit 1, but the amended Chapter 11 plan was denied confirmation when sufficient creditors voted against the plan. Those creditors vigorously opposing confirmation included St. Marie Condominium Association and North Valley Sewer and Water District. Witness Bethea was at that time the manager of SMDC and was removed as President in 2004.

The list of creditors attached to the involuntary petition, and filed in evidence as Exhibit 3, is the same list of creditors filed in SMDC's Chapter 11 plan on March 29, 2004, totaling $338,707.00. Exhibit 37. It is not disputed by SMDC that as to a majority of those claims, they have not been paid, except for some payments to St. Marie Village Association and North Val-

ley Water and Sewer District. Further, the claims of Dunseth and GTMS are subject to litigation now pending in state court and are thus in bonafide dispute. Exhibit D.

The current president of SMDC Davick, an experienced real estate developer, stated SMDC has $394.00 in its bank account, but the bulk of remaining assets is real property in the form of housing units in the town of St. Marie, which are subject to unpaid real property tax liens, water assessments and construction liens filed by GTMS and Bethea. Moreover, the ability to obtain title insurance to sell the property is severely restricted due to past actions by NVCCA, controlled by Bethea and St. Marie Condominium Association, which have legal authority to manage common areas and assess fees for their services. It is clear from the evidence that whether NVCCA is a valid organization under Montana law is in serious doubt for failure to comply with Montana's Corporation Code. Exhibit BBB, A and F. In the state court litigation (Exhibits A through F) now pending in the Montana Seventeenth Judicial District Court, Valley County, brought by GTMS and Dunseth on November 5, 2004, against SMDC to collect $158,633.31, SMDC joined Bethea as a party, alleged GTMS has been dissolved by Montana on December 3, 2001, and SMDC filed counterclaims against Dunseth, GTMS and Bethea charging Dunseth and Bethea breached their duty of loyalty and fiduciary duty to SMDC by self-dealing at the expense of SMDC, wrongfully exercised dominion over the corporate books and records which caused financial loss and slandered SMDC's title to its real property through filing of record numerous improper and fraudulent construction liens.

The evidence further shows that NVCCA (Bethea's corporate front) never had a shareholders meeting since 2001 and thus had no corporate power when it exercised control over SMDC units. GTMS filed a lis pendens against the SMDC units even though it sued (Exhibit A) on an unsecured debt, Exhibit UU. Thus, the outstanding title problems of SMDC have been created by GTMS, Dunseth and Bethea.

SMDC litigation against Bethea, Dunseth and GTMS is being funded by a shareholder of SMDC, Kelly, who asserts that if the Chapter 7 involuntary petition is granted, be cannot and will not fund further litigation on behalf of SMDC. Craig Martinson, an experienced Chapter 7 Trustee for over 8 years, gave his expert opinion that if the involuntary petition is granted, the Chapter 7 trustee would abandon all of the assets due to title problems and secured claims against the property and the inability to sell the units for the benefit of creditors or to pay administrative expenses.

It is further evident that the antagonism which Bethea/Dunseth generated in the St. Marie community while in control of SMCA and its predecessor has now disintegrated under the management of Mr. Davick. A number of creditors, shareholders of SMDC and community leaders testified against the Chapter 7 petition on the basis that they were satisfied with the current management which give hope that the state court litigation and business operation will bring SMDC into a positive picture. As examples, Dave Pippin, Valley County commissioner, expressed confidence in the present management considering the progress made since Davick took the helm. Eleanor Lindsey, President of the Condominium Association, now sees a bright future for the Village after many years of bitter dispute. Another former opponent of SMDC when controlled by Bethea, North Valley Sewer and Water District, through its President, Jerry Ket-

chum, testified that the relationship between that organization and SMDC's new management was in stark contrast to the Bethea years of operation, and as a shareholder of SMDC, was not in favor of the Chapter 7 involuntary petition. In fact, under Davick's leadership, some payments on the past obligation owing to North Valley Water and Sewer have been accomplished. Valley County and North Valley Water and Sewer District are the largest secured creditors of SMDC, and even though they would have a preferred creditor status in a Chapter 7 case, they both oppose Chapter 7 as a vehicle for relief.

It is also evident from the testimony of counsel for SMDC in the state court litigation, Mr. DeFelice, that a Chapter 7 case would gut the counterclaims of SMDC since the funding for the lawsuit would dry up, and control over the litigation would be lost. Mr. DeFelice expressed confidence in a successful result for SMDC and it is evident that the Bethea/Dunseth group want to use a Chapter 7 case as a litigation tactic to stop the state court proceeding.

The petitioners in this cause proved only one point. They established that a sizeable debt was incurred by SMDC when they ran the corporation for their own private gain. It is further noteworthy that Bethea brought Spiers into the cause, since Mrs. Spiers is Bethea's mother and Mr. Spiers his step-father. As to NVCCA, that company was founded by Bethea when he was also an officer, director and owner of GTMS. Exhibit BBB. Through GTMS, EMS Trust (Spiers) Bethea gained control of 94 units in St. Marie. Exhibit 22. Twenty of those units were purchased for $500.00 per unit. As noted previously, Bethea and GTMS ran SMDC through 2004, when the charge to Davick took place. Notably, Bethea acquired at a nonjudicial foreclosure the hospital for $264,360.00 and ambulance garage for $14,211.00, Exhibit M. Furthermore, Edson, Suminski and Dunseth took ownership through tax deeds and trade of 42 units, Exhibit AAA. All of which shows a perpetual conflict of interest which is subject to the state court litigation. Finally, Dunseth took a mortgage prepared by Bethea against property of SMDC, which he and one Hathaway signed on behalf of SMDC. Exhibit P. Ironically, upon the filing of the mortgage with the Valley County Clerk and Recorder on September 24, 2003, it was immediately in default under a provision that default occurs if real property taxes are unpaid. The taxes were delinquent on September 24, 2003. Dunseth foreclosed on units worth $31,868.00 at a non-judicial foreclosure sale by paying $8,750.00 of debt. All of the above shows Dunseth, Bethea and Suminski as petitioning creditors and while in control of SMDC have systematically acted in their own interests and contrary to the best interests of SMDC. This fact thus leaves those petitioners as the majors competitors to SMDC developing its property and selling its units to satisfy creditors. The state court litigation will be the sole and only decisive vehicle for SMDC to straighten out the land title problems and make SMDC's units marketable.

## CONCLUSIONS OF LAW

*Involuntary Petition.*

Petitioning creditors have the burden to prove that SMDC, the alleged debtor, is not generally paying its debtor as they become due and that there is no bonafide dispute as to the claims in issue. *In re Rubin,* 769 F.2d 611, 615 (9th Cir. 1985). A finding that the debtors are generally not paying their debts requires a more general showing of the debtor's financial condition and debt structure then merely establishing the existence of a few unpaid debts, *In re Dill,* 731 F.2d 629, 632

(9th Cir.1984). 11 U.S.C. § 303(h)(1) provides relief may be granted only if "(1) the debtor is generally not paying such debtor's debts as such debts become due unless the debts are the subject of a bona fide dispute[.]" The "generally not paying" test is to be applies as of the date of the filing of the involuntary petition and is to be guided by the totality of the circumstances. *Molen, supra,* at 846. The court should consider both the number of the creditors and the amount due in determining whether the inability to pay or failure to pay is in fact "general". *Id.* Under this standard as applied to the case *sub judice,* it is clear that a substantial amount of the debt which arose under the petitioners control of SMDC is in dispute and is based on an unsecured creditors list derived from the 2003 failed Chapter 11 case. Exhibit 3. Of the $338,707.00 of unsecured debt, Bethea, Dunseth, GTMS, Spiers and Suminski account for $203,002.00 of the debt, which is subject to bona fide dispute. A bulk of the balance is owed for past director fees and aged U.S. Trustee fees. North Valley Water and Sewer District is owed $25,086.00, but some payment has been made on that account. I further conclude that since the old Chapter 11 claims were filed in that failed case, new management has taken control of a corporation (SMDC) which had been left in total disarray financially by prior management. Davick's entrance into the situation has kept the bills current with funds from shareholder Kelly. The majority of debts therefore clearly are those held by former insiders of SMDC, and are extraordinary in nature. These former insiders have stifled prospects for future income from sale of the units. SMDC has shown that serious misconduct has created the financial dilemma of SMDC and that current management is now engaged in proper corporate conduct to correct the situation and make SMDC a viable entity.

■ As to the argument of SMDC that the petition was filed in bad faith, I concur. Using an involuntary filing to protect one's own interest rather than protecting against other creditors, thereby gaining disproportionate advantage is bad faith, *In re Schloss,* 262 B.R. 111, 116 (Bankr. M.D.Fla.2000).

■ As held in *In re Ethanol Pacific, Inc.,* 166 B.R. 928, 930 (Bankr.D.Idaho 1994), citing *In re Tarletz,* 27 B.R. 787, 789 (Bankr.D.Colo.1983):

The cases disclose that the courts have used four factors in determining whether a debtor is generally not paying his debts: the number of debts, the amount of delinquency, the materiality of nonpayment and the nature of the debtor's conduct of his financial affairs.

The evidence is clear that the past financial problems together with the difficulties created to sell units to generate income were created by the petitioners, and since the onset of the Davick management, the problem has been alleviated through shareholders help so that by the petition date, no recent debts have been created or unpaid. That is the present status of the nature of the Debtor's business. The materiality of non-payment of the insiders' obligations is clearly dissipated by the ongoing litigation against the insiders. So the petitioners have not shown with credible evidence that SMDC is not generally paying its current obligations as they become due and such debts are **not** subject to bona fide dispute.

■ *Ethanol Pacific, id.* at 930, further holds:

Pursuant to 11 U.S.C. § 305(a) the Court may dismiss an involuntary petition for relief if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). When consider-

ing dismissal under section 305(a)(1), courts have examined a variety of factors including:

(1) whether the case involves issues of unsettled non-bankruptcy law,

(2) the availability of another forum,

(3) economy and efficiency of administration,

(4) prejudice to the parties, and

(5) the purposes of bankruptcy.

*In re Realty Trust Corp.*, 143 B.R. 920, 926 (D.N.Mariana Islands 1992) (citing *In re Business Information Co.*, 81 B.R. 382, 387 (Bankr.W.D.Pa.1988)); *see also In re Powers*, 35 B.R. 700 (Bankr. W.D.Mo.1984).

Applying the undisputed facts to the above factors, I conclude this case involves issues of unsettled non-bankruptcy law presented in the state court litigation, which is an available forum to try and decide such issues. Economy and efficiency of administration of a Chapter 7 estate and the purposes of bankruptcy would not be met as explained by expert witness Trustee Martinson.

 Moreover, the Court notes that GTMS filed a lis pendens against units owned by SMDC as a result of unsecured debt. The filing of the Valley County Lis Pendens was grievous, and a clear abuse of Montana law and obviously designed to further SMDC's efforts to market and sell its sole assets, namely, residential units at St. Marie. *Paulson v. Lee*, 229 Mont. 164, 745 P.2d 359 (Mont.1987), interprets Mont. Code Ann. § 70–19–102, which begins at subsection (1) with the phrase: "In an action affecting the title or right of possession of real property . . . ." *Paulson* holds:

The language of the statute, however, does not suggest such a strict application, but, rather, demands only that the action affect title or right of possession of real property. We believe this non-restrictive view reflects the purpose of the notice. As evident by subsection (2) of § 70–19–102, MCA, one vital purpose of the notice is to notify subsequent purchasers and encumbrancers of pending litigation. This provision protects the claimant should the claimant receive a favorable judgment. This was a principal concern for the defendants when they filed the 1984 action. A second purpose of the notice is to alert third parties interested in the subject property, thereby protecting them from litigation attendant to the property. *See Fox v. Clarys* (Mont.1987), [227 Mont. 194] 738 P.2d 104, 106, 44 St.Rep. 1004, 1007. We hold that the defendants were not required to show an actual claim to title or possession of the subject property.

Even though the plaintiffs in [*Lee v. Flathead County*, 217 Mont. 370, 704 P.2d 1060 (Mont.1985)] asserted no claim to the property, they asked generally for an injunction against the construction, sale, or lease of the property. Had the District Court ordered such an injunction, certainly the title and right of possession would have been affected.

*Paulson*, 229 Mont. at 167–68, 745 P.2d 359. *Fox* held: "The doctrine of lis pendens was created to hold the subject matter of litigation within the jurisdiction and control of the court during the pendency of an action so that any final relief granted by the court would be at once binding and effective." *Id.* 229 Mont. at 196, 745 P.2d 1126 (Citing treatise). This holding clearly interprets § 70–19–102 in such a way that a notice of lis pendens may only be filed where title or possession of real property is at issue and where the action may affect such title or possession. The claims of Bethea and his inner circle do not in any remote sense involve or affect title to or possession of SMDC's real property.

Finally, placing this case into Chapter 7, as sought by the petitioners, would be clear prejudice to other bona fide creditors and shareholders of the alleged Debtor, since it would likely stop the final conclusion sought by SMDC in the state court case, which attorney DeFelice opined would have substantial success on the merits in favor of SMDC. Since all of § 305(a)(1) criteria have been satisfied, I conclude the interests of creditors and the alleged Debtor would be better served by dismissal of the petition.

*Attorney's Fees and Costs.*

 A finding of bad faith may generate an award of damages under § 303(i)(2). No damages have been proven by SMDC's evidence. However, under § 303(i)(1), if the court dismisses the involuntary petition other than on consent of the petitioners and the debtor, the court may grant judgment:

> (1) against the petitioners and in favor of the debtor for–
>
> (A) costs; or
>
> (B) a reasonable attorney's fee.

The alleged Debtor here seeks such award of costs and attorney's fees and thus has not waived its right to recovery under § 303. While it is recognized that an award of attorney's fees and costs is within the court's discretion, as stated in *Schloss, supra,* at 116:

> ... there is some authority to support the proposition that an award is appropriate in all cases where the Debtor successfully defended against an involuntary Petition. Thus, the right to an award for fees and costs creates a rebuttable presumption. *In re K.P. Enterprise,* 135 B.R. 174 (Bankr.D.Me.1992).

Since I have found the petition was filed in bad faith and the Debtor has successfully defended against the Involuntary Petition which requires dismissal, I will exercise the Court's discretion to allow SMDC's counsel to file a request and an affidavit for an award of reasonable attorney's fees and costs.

## CONCLUSION

The Court concludes as follows:

1. The petitioning creditors have failed to sustain their burden of proof that debts owed to Dunseth, GTMS and NVCCA are not subject to a bona fide dispute.

2. That petitioner Natwick Appraisal has withdrawn its petition and has failed to prosecute the petition with diligence, and is therefore dismissed as a petitioner.

3. That Petitioners Ronald and Elsie Spiers have failed to prosecute their petition with diligence and their petition for Involuntary Bankruptcy against SMDC is dismissed.

4. That the Petition for Involuntary Bankruptcy against SMDC has only two petitioners, Wilber and Suminski, and thus the petition does not satisfy 11 U.S.C. § 303(b)(2).

5. That if all of the Petitioners had standing to file the Involuntary Petition, the petition has been filed in bad faith.

6. That the Petitioners have failed to prove by a preponderance of the evidence and therefore sustain their burden of proof that the alleged Debtor SMDC is not generally paying its debts as such debts become due as of the petition date.

7. As an alternative ground, dismissal of the Involuntary Petition pursuant to 11 U.S.C. § 305(a)(1) would be in the best interests of creditors and the alleged Debtor.

8. That the alleged Debtor has failed to present any evidence that it sustained damages as a result of the filing of the Involuntary Petition.

9. That the alleged Debtor SMDC is entitled to an award of reasonable attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(2). SMDC shall have ten (10) days from the date of this Memorandum of Decision to file an affidavit in support of a request for such attorney's fees and costs.

10. That after the filing of the request for attorney's fees and costs, the Court shall enter an final Order dismissing with prejudice the Involuntary Bankruptcy Petition against the alleged Debtor SMDC and fix reasonable attorney's fees and costs.

### ORDER

At Butte in said District this 5th day of December, 2005.

■■■ Petitioners seeking to place the alleged Debtor St. Marie Development Corporation of Montana, Inc. ("SMDC") in a Chapter 7 bankruptcy, through counsel Ronald R. Arneson, have filed on November 10, 2005, a "Motion for Reconsideration" of the Court's Memorandum of Decision filed October 17, 2005 (DK No. 51) and Final Judgment thereon with award of attorney's fees and costs to SMDC filed November 9, 2005 (DK No. 57). Contrary to Montana Local Bankruptcy Rule ("Mont.LBR") 9013–1(b) and (d)[1], the motion does not specify or cite any Bankruptcy Rule of Procedure or Federal Rule of Civil Procedure under which the petitioners seek relief. These failures alone are

grounds to deny the motion. An amended motion was filed on November 23, 205, evidently to cure notice requirements, but it too is deficient.

On November 23, 2005, SMDC filed its response to the motions, asserting the amended motion is untimely as filed outside of the 10 day rule, the motions fail to specify their grounds for relief, the petitioners agreed to the discovery schedule and hearing date, the petitioners did not seek a continuance to conduct further discovery, and are estopped to do so at this late date, and the Court's decision is fully supported by the record of evidence adduced at the hearing. The Court will consider each of these matters in this Memorandum as neither party has requested or scheduled a hearing as required by Mont. LBR Rules 5070–1(b), 5074–1, 9013–1(d) and (e), and Mont. LBF 26.

■■■ F.R.B.P. Rule 9023, captioned "New Trials; Amendment of Judgments" incorporates Fed.R.Civ.P. Rule 59. F.R.B.P. Rule 9024, captioned "Relief From Judgment or Order" incorporates Fed.R.Civ.P. 60. *Circuit City Stores, Inc. v. Mantor,* 417 F.3d 1060, 1063 (9th Cir. 2005), discussing a motion for reconsideration under Rule 59(e) or 60(b), citing *American Ironworks & Erectors, Inc. v. North Am. Const. Corp.,* 248 F.3d 892, 898–99 (9th Cir.2001), holds that a motion for reconsideration[2] "is treated as a mo-

---

1. The motions fail to conform with Rule 9013–1(b) and (d) which provide under "Motion Practice" that (b) such motion shall state with particularity the relevant law by section and relevant procedure by Rule upon which the moving party relies and that (d) notice of opportunity to reply shall be set forth as to time to reply in bold and conspicuous print.

2. The Bankruptcy and Federal Rules of Civil Procedure "do not recognize a motion for reconsideration". *In re Captain Blythers,* 311 B.R. 530, 539 (9th Cir.BAP2004). The peti-

tioning creditors err when they fail to cite authority under which they seek review of this Court's judgment. One court has stated very appropriately that a motion for reconsideration devoid of any relevant statutory or rule authority is a "motion asking for trouble". *In re Smith,* 242 B.R. 694, 698 n. 3 (9th Cir. BAP1999). SMDC points out such deficiency in its response. Moreover, Mont. LBR 9013–1(i) "Motions to Vacate or Amend an Order" provides: "Motions captioned as Motions to Reconsider shall be treated as Motions for Relief from Judgment or Order and should set

tion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of the entry of judgment. Otherwise it is treated as a Rule 60(b) motion for relief from judgment or order." Moreover, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. Wright, Miller & Kane, FEDERAL PRACTICE and PROCEDURE, Vol. 2D § 2801.1 (1995).

■■■■ A motion to alter or amend judgment under Rule 59(e) is appropriate "if the district court [trial court]: (1) is presented with newly discovered evidence: (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law". *Sch. Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). Since petitioners' first motion was filed within 10 days of the Judgment, I treat the motion as filed under Rule 9023 and 59(e)[3].

*Hagerman v. Yukon Energy Corp.*, 839 F.2d 407 (8th Cir.1988) explains:

Motions for reconsideration serve a limited function: to correct manifest errors

of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment ... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*In accord, Capitol Indemnity Corp. v. Russellville Steel Co., Inc.*, 367 F.3d 831, 834 (8th Cir.2004) (Rule 59(e) motions serve a limited function of correcting "manifest errors of law or fact or to present newly discovered evidence.").

*DeWit v. Firstar Corp.*, 904 F.Supp. 1476, 1494 (D.Iowa 1995) counsels:

The Eighth Circuit Court of Appeals commented on the "dangers of filing a self-styled 'motion for reconsideration' that is not described by any particular rule of federal civil procedure," and identified the usual bases upon which such motions are construed to have been

---

forth the grounds alleged to satisfy the criteria set forth in F.R.B.P. 9023 or 9024 (or Fed.R.Civ.P. 59 or 60)."

**3.** As noted, petitioners' motion violates local rules of procedure because it is not precise as to which rule they seek to invoke for relief. It is arguable that the motion could be treated under F.R.B.P. 7052, which incorporates Fed. R.Civ.P. 52(b). That rule applies where a litigant believes the court's findings or conclusions of law are erroneous in any respect, and thus seeks to amend or alter them. *Jackson v. United States*, 156 F.3d 230, 234 (1st Cir. 1998). Rule 52 is designed to create a record upon which the appellate court may obtain the necessary understanding of the issues to be determined on appeal. *Clark v. Nix*, 578 F.Supp. 1515, 1516 (S.D.Iowa 1984). But Rule 52(b) is not to be used to obtain a rehearing on the merits nor to relitigate old

questions, *see, e.g., Gutierrez v. Ashcroft*, 289 F.Supp.2d 555, 561 (D.N.J.2003), and such motion may not be used to raise arguments which could have been made in advance of the court's ruling. *Diocese of Winona v. Interstate Fire and Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir.1996). Most of the arguments by the petitioners here fall within the constrictions of Rule 52(b) and thus do not warrant consideration under that Rule. Indeed, the Court need not make findings on all disputed facts. Rather, the findings should provide a reviewing court a clear understanding of the basis of the trial court's decision and grounds upon which it was reached. *Cross v. Pasley*, 267 F.2d 824, 826 (8th Cir.1959). I therefore conclude the Court's decision satisfies such tests and decline to employ Rule 52(b). *See, DeGidio v. Pung*, 125 F.R.D. 503, 505 (D.Minn.1989).

made, in *Sanders v. Clemco Indus.,* 862 F.2d 161 (8th Cir.1988):

> Federal courts have construed this type of motion as arising under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason). *See Spinar v. South Dakota Bd. of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986). The two rules serve different purposes and produce different consequences, both substantive and procedural. *See A.D. Weiss Lithograph Co. v. Illinois Adhesive Prods. Co.,* 705 F.2d 249, 249–50 (7th Cir.1983) (per curiam). When the moving party fails to specify the rule under which it makes a postjudgment motion, that party leaves the characterization of the motion to the court's somewhat unenlightened guess, subject to the hazards of the unsuccessful moving party losing the opportunity to present the merits underlying the motion to an appellate court because of delay.

*Sanders,* 862 F.2d at 168

> \* \* \* \* \* \*

The court's "somewhat unenlightened guess" here is that the motion, filed within ten days after the judgment, was intended to be made pursuant to Fed. R.Civ.P. 59(e); *Sanders,* 862 F.2d at 168–69 (distinguishing between of a motion filed within ten days of the judgment, deemed to be made pursuant to Rule 59(e), and one made later, deemed to be made pursuant to Rule 60(b)). *Circuit City Stores, supra,* at 1063, also discusses the above notable differences between Rule 59(e) and 60(b).

■ At trial, parties are required to raise all issues and facts so the court does not face piecemeal litigation. If legal theories and facts are not raised at the trial stage, it is untimely to assert them on motion for reconsideration particularly where the evidence and theories could and should have been timely presented. As stated in *Great Hawaiian Financial Corp. v. Aiu,* 116 F.R.D. 612 (D. Hawaii 1987):

> A litigant should not be permitted to assert its argument seriatim, especially after losing a summary judgment.

> A motion for reconsideration is an improper vehicle to tender new legal theories not raised in opposition to summary judgment.

■ The same teaching applies to the pending motion for reconsideration. In the request for relief the petitioners ask this Court (1), "reconsider its previous Order dated November 9, 2005, and grant the petition and place St. Marie Development Corporation in Chapter 7 Bankruptcy"; (2)... "that the Court award Petitioners their costs, attorneys fees and appropriate punitive damages to be paid by Mr. Kelly, Mr. Davick and Mr. Johnson", and (3) "As an alternative,... suggest that the court appoint an interim Trustee and that this Trustee will schedule a special meeting of the shareholders of the St. Marie Development corporation as soon as possible for the purpose of electing a legitimate Board of Directors. The Trustee could then review with this Board the conditions of the corporation and submit a recommendation to the Court for further consideration." The last two requests cite no legal basis for relief, were never presented at trial, and on their face are without factual or legal basis and thus are summarily denied.

Petitioners' motion alleges the following premises for apparent relief under Rule 59(e):

> "A. Petitioners were not provided the opportunity to depose several of the debtor's witnesses. Kevin Davick. The only witness petitioners were able to depose refused to provide critical infor-

mation requested in the notice of deposition."

The Notice of Deposition of Davick is not in the record, nor did the petitioners submit the Davick deposition with their motion. Moreover, if petitioners' counsel desired to take other depositions of SMDC witnesses listed for trial, counsel had the right to timely seek a continuance of the hearing for that purpose, which was not done! F.R.B.P. Rule 1018—"Contested Involuntary Petitions—Applicability of Rules in Part VII Governing Adversary Proceedings"—provides that discovery rules 7024–7026, 7028–7037 apply to contested involuntary chapter 7 cases. Accordingly, discovery was available to the petitioners as a matter of right under Rule 7030, incorporating Fed.R.Civ.P. Rule 30. As a strategic matter, where a party wants discovery by deposition, it is too late to wait until after the trial to complain that the party was denied discovery, particularly when that party proceeded to trial, as did SMDC, without any compliance with Civil Rule 26 mandatory disclosure requirements. This Court has the discretion to shorten times and continue hearings to permit discovery where appropriate discovery has been timely requested. Here, petitioners had the SMDC witness list 4 days before trial and did nothing to seek pre-trial discovery. *See, e.g., Khachikyan v. Hahn*, 335 B.R. 121 (9th Cir. BAP 2005).

Further, as to the alleged failure of Davick to provide certain, unspecified financial information, petitioner's counsel had the right to seek relief under F.R.B.P. Rule 7037 (Fed.R.Civ.P. Rule 37) "Failure to Make or Cooperate in Discovery: Sanctions". Counsel did not do so, never presented the matter to the Court at trial, and this created their own dilemma. Indeed the reconsideration request is devoid of any specific financial data which petitioners now untimely assert was sought and not provided. The Court notes that under Rule 1013(a), "the court shall determine the issues of a contested petition at the earliest practical time ...." *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir.1989), quoting *Matter of B.D. Intern. Disc.*, 15 B.R. 755, 759 (Bankr.S.D.N.Y.1981) holds Rule 1013(a) is designed for speedy resolution of an involuntary petition to benefit both creditor's relief and debtor's protection. Counsel for petitioner at the hearing made no objection to proceeding with the matter and cannot complain at this late date. This specification is without merit.

"B. Debtor through its Agents and/or Representative grossly misrepresented many key points in their efforts to demonstrate bad faith on behalf of petitioners."

The petitioners' motion recites an alleged factual matter dealing with North Valley County Condominium Association, harking back to past bankruptcy petitions, some of which are in the record and some is new evidence readily available to petitioners before trial.

The matter of additional petitioners added to the case was addressed by this Court's decision. The matter regarding Glacier Trail Management Services was also addressed by the decision from the evidence in the record; as was the matter of foreclosure of the hospital and golf course projects, together with the terms of the mortgages. The ownership of condominium units by Edson is in the record, all of which is now before the Montana state district court. Thus, the specification is merely a rehash of the record, with an attempt to turn the facts more favorable to the petitioners. The specification is without merit and any matter presented after the trial is too late.

"C. Individuals appearing on behalf of the Debtor St. Marie Development Corporation of Montana (SMDC) do not have the authority to represent SMDC."

This argument dwells on the corporate existence of SMDC, which is new and was not represented at trial. As noted by SMDC, president Davick was deposed and his authority to appear on behalf of SMDC was never questioned. The argument is also contrary to the involuntary bankruptcy petition filed in this case which throughout this proceeding admits the corporate existence of SMDC. The motion on this specification consists of a rambling, unsupported rehash of irrelevant and inconsistent newly alleged facts which are disputed by SMDC. For the first time, the petitioners make unsupported allegations that the Board of Directors members in 2004 were Kelly, Davick and Carlstrom, that the By-laws provide for 12 members, and no annual meeting was called in 2005, among other details—all of which were readily available before trial. Indeed, Exhibit 29 presented by petitioners witness Bethea includes as Exhibits 2, 3, and 4 minutes of the Board of Directors of 2002, and 2003 to show its corporate existence. Docket # 1 "Involuntary Petition" filed July 1, 2005, states the names of the alleged Debtor as SMDC, with registered agent Carlstrom, a corporation, domiciled, with a place of business in this District for 180 days immediately preceding the petition and that the "debtor is a person against whom an order for relief may be entered under title 11 of the United States Code"! The evidence shows the present Board of Directors consists of Davick, Kelly, Carlstrom, Johnson, Gardner, Hansock and Hallock—which evidentially satisfied SMDC's corporate existence. To now challenge that existence is a red herring and a blatant disregard of the involuntary petition.

In sum, all of the allegations in the Motion are either already established in the record, are irrelevant to the issue of bad faith of the petitioners, contrary to their position at trial and a rehash of irrelevant matters. I must restate that the issue of bad faith involved the petition- ing creditors, not SMDC or its representatives.

The Court has therefore considered all of the allegations set forth in the motion of the petitioners, treated as a Rule 59(e) motion, and finds nothing which constitutes "newly discovered" relevant evidence, unavailable at trial, but is a rehash of factual arguments rejected by the Court, which do not in any respect change the findings of fact and conclusions of law set forth in the Court's Memorandum of decision and Judgment. Finally, the motion cited not one legal authority which points to a manifest error of law, or intervening change in controlling law, or that the Court committed clear error or the initial decision was manifestly unjust. Accordingly, for all the above reasons,

**IT IS THEREFORE ORDERED** the Petitioners' Motion for Reconsideration filed on November 17 2005, as amended on November 23, 2005, is denied.